THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES SANDSTROM and HILDA SANDSTROM, Appellants.

524

Argued December 5, 1938; decided January 17, 1939.

*Arthur Garfield Hays, O. R. Moyle, Percy S. Straus, Jr.*, and *Bernard Katz* for appellants. The trial court erred in not holding that section 712 of the Education Law (Cons. Laws, ch. 16), as interpreted by the school' board, is unconstitutional and void under the due process clause of the Fourteenth Amendment to the Constitution of the United States. The appellants' right to religious liberty and freedom of worship included in the Fourteenth Amendment is unlawfully restricted and denied. (*Gitlow* v. *New York*, 268 U. S. 652; *Grasjean* v. *American Press Co.*, 297 U. S. 233; *Whitney* v. *California*, 274 U. S. 357; *King Mfg. Co.* v. *Augusta*, 277 U. S. 100; *Watson* v. *Jones*, 80 U. S. 679; *Davis* v. *Beason*, 133 U. S. 333; *Knowles* v. *United States*, 170 Fed. Rep. 409; *Reynolds* v. *United States*, 98 U. S. 145.) The appellants are denied the right guaranteed by the Fourteenth Amendment to have their children attend the free public schools and acquire an education by conditioning the exercise of that right upon compliance with a condition which violates the

Fourteenth Amendment. (*Allgeyer* v. *Louisiana*, 165 U. S. 578; *Meyer* v. *Nebraska*, 262 U. S. 390; *Pierce* v. *Society of Sisters*, 268 U. S. 510; *Terral* v. *Burke Construction Co.*, 257 U. S. 529; *People* v. *Stanley*, 81 Col. 76; *Frost* v. *Railroad Comm.*, 271 U. S. 583; *Hanover Ins. Co.* v. *Harding*, 272 U. S. 494.) The trial court erred in not holding that section 712, as interpreted by the school board, is unconstitutional and void under article 1 of section 3 of the State Constitution and in not holding that the appellants are deprived of their right of religious liberty and freedom of worship. (*Smith* v. *Donahue*, 202 App. Div. 656; *People* v. *Ruggles*, 8 Johns. 290; *Hardwick* v. *Board of School Trustees*, 54 Cal. App. 696.) The County Court erred in not holding that the compulsory flag saluting requirement was unconstitutional and void under article IX of section 1 of the State Constitution and in not holding that the appellants are unlawfully denied their right to have their children attend the free public schools. (*O'Connor* v. *Hendrick*, 109 App. Div. 361; *Smith* v. *Donahue*, 202 App. Div. 656.) The question involved in this case is new. Compulsory flag saluting requirements are invalid. (*Gabrielli* v. *Knickerbocker*, 74 Pac. Rep. [2d] 290; *Gobitis* v. *Minersville School District*, 21 Fed. Supp. 581.)

*Joseph F. Rutherford* for Jehovah's Witnesses, *amicus curiæ*. The regulation as applied is invalid because it infringes upon the free exercise and enjoyment of religious profession and worship without justification therefor. (*Gobitis* v. *Minersville School District*, 21 Fed. Supp. 581.) The regulation is invalid because no purpose of action against Christianity may be imputed to any statute, ordinance or regulation. (*Holy Trinity Church* v. *United States*, 143 U. S. 457; *People* v. *Board of Education*, 245 Ill. 234.)

*Fred J. Munder, District Attorney* (*Harry C. Brenner* of counsel), for respondent. Section 627 of the Education

Law does not violate the State Constitution. (*Hamilton v. Regents*, 293 U. S. 245; *Reynolds* v. *United States*, 98 U. S. 145; *Davis* v. *Beason*, 133 U. S. 333; *Nicholls* v. *Mayor*, 7 N. E. Rep. [2d] 577; *Leoles* v. *Landers*, 184 Ga. 586; *Hering* v. *Board of Education*, 117 N. J. L. 455; 118 N. J. L. 566; *Gabrielli* v. *Knickerbocker*, 82 Pac. Rep. [2d] 391; *Butler* v. *United States*, 297 U. S. 1.) A statute of the State requiring flag saluting exercises in the public schools does not violate the Constitution of the United States. (*Hamilton* v. *Regents*, 293 U. S. 245; *Hering* v. *State Board of Education*, 303 U. S. 624; *Leoles* v. *Landers*, 82 L. Ed. 257.)

CRANE, Ch. J. We must have before us the pertinent provisions of the Education Law (Cons. Laws, ch. 16) to understand this case. Section 712 of that law, as found in book 16 of McKinney's Consolidated Laws of New York (Annotated), makes it the *duty* of the Commissioner of Education to prepare, for the use of public schools of the State, a program providing for a salute to the flag, for instruction in its correct use and display and such other patriotic exercises as may be deemed by him to be expedient.

In each school district of the State, each minor from seven to sixteen years of age shall attend upon full time day instruction (§ 621). Persons in parental relationship to such a minor " shall cause such minor to attend upon instruction as hereinbefore required " (§ 627, subd. B [2]). A minor under seventeen years of age required to attend upon instruction, who is irregular in such attendance or insubordinate or disorderly during such attendance, is a school delinquent and may be required, pursuant to the provisions of section 628, to attend a special day school or attend upon instruction under confinement at a parental school or elsewhere. Subdivision F (a) provides that the school authorities may suspend a minor from required attendance upon instruction, who is insubordinate or disorderly, that is, may expel such a scholar.

In section 627 we find this exception: A person in parental relation to a minor shall not be subject to the provisions of this section requiring the minor to attend upon instruction if it can be shown that he is unable to control the minor.

Any violation of these provisions shall be punishable for the first offense by a fine not exceeding ten dollars, or ten days in prison, or for each subsequent offense by a fine not exceeding fifty dollars, or by imprisonment not exceeding thirty days, or both by such fine and imprisonment (§ 641).

These provisions spell out the following procedure for recalcitrant scholars: If the parent refuses to send the minor to school or refuses to cause him to attend upon instruction, the parent can be punished as provided by the law. The minor himself who is insubordinate or disorderly and refuses to obey regulations may be expelled or, for continued insubordination or non-attendance, may be sent upon proper notice to a parental school.

Under the above provisions of the law the district school at Lake Ronkonkoma, town of Brookhaven, county of Suffolk, pursuant to the regulations of the Commissioner of Education, as required by section 712, had a simple ceremony of saluting the flag. Grace Sandstrom, a young girl thirteen years of age, refused to take part in these ceremonies and refused to make the salute with the other scholars. She was repeatedly requested to do so by her teacher and principal, and still refused. The teachers were not at fault. Every time she was sent home she was sent back by her parents. She never refused to attend the school; she always came back, and yet she refused to comply with the regulations or take part in the ceremony. As soon as she was sent home the truant officer was notified and she was immediately sent back by her parents. There is no evidence in the case that she ever was kept home or was refused attendance upon instruction or that she desired to stay away from school

or attempted to do so. In fact, she persisted upon coming as well as being steadfast in her refusal to salute the flag. Two other children, younger than herself, of the same family, were also students in the school, but there seems to have been no trouble with them.

This proceeding was then taken before the justice of the peace to punish the parents under section 627, subdivision 2, of the Education Law, the information stating that they wrongfully and unlawfully and maliciously did keep one Grace Sandstrom from attending upon full time instruction in the public school, she being a minor between seven and sixteen years of age. The fact is, as is evidenced throughout the entire record, that the parents did nothing of the kind. They repeatedly sent the child back and the child always came back to school after being sent home. I can see no justification for this proceeding against the parents. If the young girl was insubordinate and disobedient to all the proper orders and regulations of the school, she is the one that should have been dealt with under the provisions of the Education Law. In like cases where this same question has arisen, the procedure has always been to expel the student, not to punish the parents unless they in some way have disobeyed the law.

Before suggesting, however, that this young girl be summarily dealt with, let us consider the case a step further.

The defendants are members of, or associated with, the religious order known as Jehovah's Witnesses. Part of their belief is that allegiance is due only to God, and that the salute or recognition of the national flag is placing this symbol above the Almighty. The young girl Grace, upon the stand in this case, explained her actions by saying, " Mr. Terry [the principal of the school] went up to the front of the room and he said he did not want to see anybody not saluting the flag. * * * I told him that saluting the flag is like worshiping an image, and that in the Bible in the twentieth chapter of Exodus

it says, ' Thou shalt not make unto thee any graven image of anything in heaven above or in the earth beneath; thou shalt not bow down to them nor serve them.' * * * He sent me home."

" Q. Did your parents ever keep you from going to school? A. No. I came to school one day. Mr. Terry asked me if I would salute the flag and I said ' No.' He said I should put my books in my desk and go home.

" Q. People who write the pamphlets and papers for your religion, do you know if they ever said anything whether Jehovah's Witnesses should salute the flag or not? A. In the ' Loyalty ' booklet it told about other school children who had refused and that they were expelled.

" Q. What do you think would happen to you if you salute the flag contrary to your conscience? A. When the battle of Armageddon comes, I would be slain. Because the flag is an image and it says in the Bible not to bow down to images."

The appellants claim that to compel Grace to salute the flag contrary to her religious convictions or conscience is contrary to the provisions of the State Constitution (Art. 1, § 3), which reads: " The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this State to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State."

Saluting the flag in no sense is an act of worship or a species of idolatry, nor does it constitute any approach to a religious observance. The flag has nothing to do with religion, and in all the history of this country it has stood for just the contrary, namely, the principle that

people may worship as they please or need not worship at all. On the other hand, our Constitution, both Federal and State, recognizes that a religious belief, whatever it is, cannot interfere with the laws which the State enacts for its preservation, safety or welfare. In time of war the government may seize property and take liberty for its self protection. We are all familiar with the draft which called our young men to arms and to service for the nation. For the preservation of peace and for the prevention of war, the State may take measures which may lead the youth of the country to respect law and order, and to value the protection and the blessings afforded by those fundamental principles, of which the flag is a mere representative.

The State cannot reasonably be required to defer the adoption of measures for its own peace and safety until revolutionary utterance and acts lead to actual disturbance of the public peace or imminent and immediate danger of its own destruction; but it may, in the exercise of its judgment, seek to prevent evil in its incipiency. (*Gitlow* v. *New York*, 268 U. S. 652, 669.)

While legislation for the establishment of religion is forbidden, and its free exercise permitted, it does not follow that everything which may be so called can be tolerated. * (*Davis* v. *Beason*, 133 U. S. 333, p. 345.)

The States, like Congress, are free to reach actions which are in violation of social duties or subversive of good order. (*Reynolds* v. *United States*, 98 U. S. 145, 164.)

In *Pierce* v. *Society of Sisters* (268 U. S. 510, p. 534) the court said: " No question is raised concerning the power of the State reasonably to regulate all schools, * * * to require * * * that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare."

The recent case of *Hamilton* v. *Regents* (293 U. S. 245) related to the action of the University of California in

expelling students who refused to take the required course of military training. The students objected to taking this course of training because of conscientious convictions and the teachings of the Methodist Episcopal Church and of the Epworth League in reference to war and the preparations for war. The court, treating the action of the University of California as being that of the State itself, said: " Appellants assert — unquestionably in good faith — that all war, preparation for war, and the training required by the university, are repugnant to the tenets and discipline of their church, to their religion and to their consciences. * * * Government, federal and state, each in its own sphere owes a duty to the people within its jurisdiction to preserve itself in adequate strength to maintain peace and order and to assure the just enforcement of law. And every citizen owes the reciprocal duty, according to his capacity, to support and defend government against all enemies " (p. 261).

Quoting from *United States* v. *Schwimmer* (279 U. S. 644), the court continued: " Whatever tends to lessen the willingness of citizens to discharge their duty to bear arms in the country's defense detracts from the strength and safety of the Government " (p. 263).

There is another strength which is necessary to preserve the government besides military force, and that is the moral strength, or public opinion of its citizens. Public opinion is as vital to the maintenance of good government as an army or a navy; in fact these latter can be destroyed quicker by public opinion than by the attacks of an enemy. Many a nation has succumbed to the breakdown of the morale of its people. The State, therefore, is justified in taking such measures as will engender and maintain patriotism in the young.

Provisions in other States similar to our own, requiring salute to the flag, have been held legal, and the expulsion of pupils for disobedience sustained. ( *Nichclls* v. *Mayor*, 7 N. E. Rep. [2d] 577, not yet officially reported,

decided April 1, 1937, by the Supreme Judicial Court of Massachusetts; *Leoles* v. *Landers,* 184 Ga. 580; *Hering* v. *State Board of Education,* 117 N. J. L. 455.)

These are ponderous truths to flash upon this little girl who in all conscientiousness cannot, at her time of life, grasp them. Let us re-examine this statute which the Legislature has adopted. Surely from the reading of it we can gather that it was never intended to force patriotism upon children by a militaristic order. It seeks to teach, to enlighten, to reveal, to lead the mind, to understand and appreciate what our government really is and what the flag stands for. This young girl is deep in her reverence for the commands of the Old Testament. We hope, and so evidently did the Legislature, that by a course of instruction in our public schools, the children will see that that justice, that mercy and that humility which is the burden of Holy Writ, is also the aim and object of the things the American flag stands for.

The Education Law says that the Commissioner shall prepare a program, not merely for the salute to the flag, but for instruction in its correct use, and for such other patriotic exercises as may be deemed by him to be expedient. The emphasis here, I am sure, must be placed more upon instruction than mere blind obedience. We require the children to go to school to be instructed, among other things, in patriotism, which means to acquire some knowledge of the history and struggle of man to devise a government which will protect and develop the best in life. Surely, saluting a flag, even an American flag, is of little vital force to the nation unless behind it there is a love and reverence for the things it represents.

The program of the Commissioner of Education was in accordance with the Education Law, not contrary to any rights preserved by the Constitution. Grace, in attending this school, provided by the State for her education, should have participated in the ceremony with the other scholars. We must say, as judges interpreting the

law, that if she is to stay in school she must be obedient. May there not be, however, a better way for accomplishing the purposes of this law than immediate resort to disciplinary measures? Faith in our fine educational system and its corps of efficient teachers leads one to believe that with a little more patience and some tact, as the child grows in knowledge a reverence for our flag will develop, and she will be glad that it is still here to salute. This section 712 of the Education Law relating to the salute to the flag has in substance been upon the statute books since 1898, a period of forty years. This is the first time that any trouble has arisen regarding its enforcement, which is some indication of its universal observance.

The conviction of the defendant parents should be reversed, and the information dismissed, for the reasons which we have stated at the beginning of this opinion, and if it is thought necessary to carry the matter further, the action must be against the scholar, not the parents.

In each case, the judgment should be reversed and the information dismissed.

LEHMAN, J. (concurring in result). I concur in the decision and in all that is said in the opinion except in so far as it indicates that the defendants' daughter may, on pain of expulsion, be compelled to salute the flag though such salute be contrary to her religious convictions and her conscience.

The American flag is the symbol of our country; the symbol of the ideals which are embodied in our Constitution; the symbol of the spirit which should animate our institutions. In the noble words of Charles Sumner, it is " to be cherished by all our hearts, to be upheld by all our hands." I do not doubt that our schools will utterly fail in their purpose if they do not teach the children those great principles of liberty and democracy for which the founders of the Republic fought, which they formulated in the Declaration of Independence and which by the Bill of Rights, in our Constitution, were made

inviolate. The schools, I agree, should not only teach these principles to the children but the teachers should also inspire the children with a love of country so deep and so understanding that when they grow up, they will be ready to defend it against attack by enemies from without and against attack by enemies within who would undermine its principles and destroy its Constitution. The State may require that " studies plainly essential to good citizenship " should be taught in the schools. (*Pierce* v. *Society of Sisters*, 268 U. S. 510.)

The statutory directions to the Commissioner of Education " to prepare, for the use of the public schools of the state, a program providing for a salute to the flag, for instruction in its correct use and display and such other patriotic exercises as may be deemed by him to be expedient   *   *   * " (Education Law, § 712), may be regarded as a legislative determination that such a program will tend to inculcate a love of country in the children and should be part of the school exercises. I do not differ with my associates when they say that " saluting the flag in no sense is an act of worship or a species of idolatry, nor does it constitute any approach to a religious observance. The flag has nothing to do with religion, and in all the history of this country it has stood for just the contrary, namely, the principle that people may worship as they please or need not worship at all." Like my associates, I believe that the Legislature may properly direct the preparation  of a " program providing for a salute to the flag, as part of the regular exercises of every school." Like my associates, I find it difficult to understand how any reasonable and well-disposed person can object to such a salute on religious or other grounds. The question remains whether the Legislature intended to direct or could, under our Constitution, direct that a child may be *compelled* to join in the exercises in those rare cases where such exercises are contrary to the religious principles and doctrines of the child and its parents.

Religious freedom guaranteed by the Constitution is broader than the principle that "people may worship as they please or need not worship at all." It includes the right of the individual to carry out every obligation which *he believes* has a divine sanction, "to *practice any religious principle,* and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights." (*Watson* v. *Jones,* 80 U. S. 679, at 728.) (Italics here and throughout this opinion are mine.) "The term ' religion ' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. * * * With man's relations to his Maker and *the obligations he may think they impose,* and the manner in which an expression shall be made by him of his belief on those subjects, no interference can be permitted, provided always the laws of society, designed to secure its peace and prosperity, and the morals of its people, are not interfered with." (*Davis* v. *Beason,* 133 U. S. 333, at 342.) There are many acts which are not acts of worship and which for most men have no religious significance and are entirely unrelated to the practice of any religious principle or tenet but which may involve a violation of an obligation which other men may think is imposed upon them by divine command or religious authority. To use a homely illustration, partaking of food is ordinarily in no sense "any approach to a religious observance." It is purely mundane, with no religious significance, and yet ordinances establishing fast days or prohibiting the use of certain kinds of food are a part of the religion of many people. Interference by the State with such religious ordinances; commands by the State or its officers to violate these ordinances, can be justified only where observance of the religious ordinances obstructs "the laws of society designed to secure its peace and prosperity, and the morals of its people." The right of the principal of

the school to command the little child of the defendants to join in the salute of the flag must be tested by the same standards.

When the Legislature directed the Commissioner of Education to prepare a program providing for a salute to the flag, it did not in terms provide that all the school children must join in the salute. Perhaps the Legislature assumed that because the salute to the flag is not a religious act, no person would object to the program on religious grounds. Perhaps it assumed that no well-disposed person could object to the salute on any reasonable ground and that a principal of a school might in the exercise of a reasonable discretion and without offending the religious convictions of any person, direct all the children of the school to join in the patriotic exercises. None the less, I can find in the statute no fair implication that every child *must* take part in such exercises, even though some children might be taught by their parents or religious instructors that a salute to the flag would be disobedience to the command of God. A command of the State to such a child, whether given by the Legislature or by a school principal deriving authority from the statute would, I think, transcend the limitations imposed by the Constitution upon the powers of government.

Episcopalians and Methodists and Presbyterians and Baptists, Catholics and Jews, may all agree that a salute to the flag cannot be disobedience to the will of the Creator; all the judges of the State may agree that no well-intentioned person could reasonably object to such a salute; but this little child has been taught to believe otherwise. She must choose between obedience to the command of the principal of the school, and obedience to what she has been taught and believes is the command of God. She has chosen to obey what she believes to be the command of God. I cannot assent to the dictum of the prevailing opinion that she must obey the command of the principal, though trembling lest she incur the

righteous wrath of her Maker and be slain " when the battle of Armageddon comes."

The Constitution of the State in guaranteeing liberty of conscience has expressly imposed the same limitations upon its exercise which are implied in the guaranty contained in the Federal Constitution. It " shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State." (Art. 1, § 3.) The words " inconsistent with the peace or safety of this State " should not, I agree, be limited too closely. It has been said by Chief Justice HUGHES, with the concurrence of Mr. Justice HOLMES, Mr. Justice BRANDIES and Mr. Justice STONE, that " The battle for religious liberty has been fought and won with respect to religious beliefs and practices, which are not in conflict with good order, upon the very ground of the supremacy of conscience within its proper field. What that field is, under our system of government, presents in part a question of constitutional law and also, in part, *one of legislative policy in avoiding unnecessary clashes with the dictates of conscience.*" ( *United States* v. *Macintosh*, 283 U. S. 605, at 634.) There is no need here to attempt to mark the exact limits of governmental powers in constraint of conscience. Certainly such governmental powers may not at their widest be asserted to prohibit beliefs and practices which are not in conflict with good order or to compel acts which have no reasonable relation to the peace or safety or even the general welfare of the State or Nation.

It is true, as the prevailing opinion points out, that in other States where such question has been presented the courts have accepted the argument that the State may attach reasonable conditions to the right of a child to attend school and have held that the school authorities may expel a child for refusal to join in school exercises which include a salute to the flag. In this State the Constitution (Art. IX, § 1) provides that " all the children

of this State may be educated " in the free common schools of the State. A right *guaranteed by the Constitution* to all children of the State may not be abridged and invaded by the Legislature or by any administrative officer of the State. This court has called it a " legal right." (*People ex rel. Cisco* v. *School Board,* 161 N. Y. 598.) The right to attend school is, from its nature, subject to the condition that each child will conduct itself in orderly manner and will obey the orders of the teachers and administrative officers of the school acting within the limits of their authority and the constitutional guaranty is not invaded by a statute enacted by the State in the exercise of its police power. Such statute must, however, have " adequate connection with the common good." To justify exclusion of a child from the common schools it " must tend in a degree that is perceptible and clear towards the preservation of the  *  *  *  health  *  *  *  or welfare of the community, as those words have been used and construed in the many cases heretofore decided." (*Matter of Viemeister,* 179 N. Y. 235, 238.) The Legislature cannot authorize the school authorities to give an order which outrages the religious conscience of a child at least unless such order does in reasonable degree tend to promote the general health or welfare or is required for the orderly conduct of the school.

An act of disrespect to the flag by child or parent may be punished, but there is no disrespect to the flag in refusal to salute the flag by a child who has been taught that it is a moral wrong to show respect in the form of a salute. The legitimate purpose of the salute to the flag is, as Chief Judge CRANE points out, to inculcate love of country and reverence for the things which the flag represents; it may be an aid in teaching good citizenship — but surely not where a little child is compelled in fear and trembling to join in an act which her conscience tells her is wrong. She does not insist upon doing an

act which might harm herself or others; she does not refuse to do an act which might promote the peace, safety, strength or welfare of her country. She does not ask to stay away from any courses of instruction offered by the school. She does not refuse to show love and respect for the flag. She refuses only to show her love and respect in manner which she believes her God has forbidden. She asks only that she be not compelled to incur the wrath of her God by disobedience to His commands. The flag salute would lose no dignity or worth if she were permitted to refrain from joining in it. On the contrary, that would be an impressive lesson for her and the other children that the flag stands for absolute freedom of conscience except where freedom of conscience is asserted " to justify practices inconsistent with the peace or safety of this State."

The salute of the flag is a gesture of love and respect — fine when there is real love and respect back of the gesture. The flag is dishonored by a salute by a child in reluctant and terrified obedience to a command of secular authority which clashes with the dictates of conscience. The flag " cherished by all our hearts " should not be soiled by the tears of a little child. The Constitution does not permit, and the Legislature never intended, that the flag should be so soiled and dishonored.

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur with CRANE, Ch. J.; LEHMAN, J., concurs in separate opinion.

Judgments reversed, etc.]