**Gerald A. DOYLE, Jr., Plaintiff,**

v.

**Robert J. FLEMING, Jr., Governor of the Canal Zone Government and Cyrus R. Vance, Secretary of the Army in his supervisory capacity for the administration of the Canal Zone Government, Defendants.**

**Civ. No. 5456.**

District Court, Canal Zone, Division Balboa.

July 8, 1963.

---

Engelbert J. Berger, Cristobal, Canal Zone and William S. Tyson, Washington, D. C., for plaintiff.

John W. Douglas, Asst. Atty. Gen. and Harlan F. Leathers, John J. Cowan, Carl Eardley and Donald B. MacGuineas, Attys., Dept. of Justice, Washington, D. C., and Rowland K. Hazard, U. S. Atty.,

Balboa, Canal Zone, of counsel, for defendants.

CROWE, District Judge.

The plaintiff, Gerald A. Doyle, Jr., began this action by filing a complaint against the defendant, Robert J. Fleming, Jr., Governor of the Canal Zone Government. The complaint was filed on October 26, 1962 and prayed for a temporary restraining order and a perpetual injunction to restrain Fleming from displaying on or about any public building in the Canal Zone, on a daily or permanent basis, any national flag or banner except the national flag of the United States.

Doyle alleged that Fleming's proposed act of displaying the Panamanian flag on or about the Administration Building of the Canal Zone and numerous other places at an equal height with the flag of the United States is contrary to the laws of the United States, would place the sovereignty of the United States in the Canal Zone in jeopardy and that the plaintiff and other taxpayers of the United States would suffer irreparable damage thereby and he has no adequate remedy at law.

Plaintiff filed with his complaint a list of Points and Authorities in compliance with the Canal Zone Code and among other things stated that he relies on 36 U.S.C. § 175(c).

The temporary restraining order was denied by this court on the ground that irreparable injury would not accrue to the plaintiff, and leave to amend was granted.

On November 23, 1962 the plaintiff amended his complaint and included therein Cyrus R. Vance, Secretary of the Army in his supervisory capacity for the administration of the Canal Zone Government.

The amended complaint asserts that "The Governor" since October 12, 1962 has caused the United States flag and the Panamanian flag to be flown at equal heights on the Thatcher Ferry Bridge in the Canal Zone, that since October 29, 1962 the flags have been caused to be flown equally by "The Governor" at the Canal Zone Administration Building and other places and that he intends to display the two flags simultaneously at equal heights in numerous public places daily in the Canal Zone.

Plaintiff states that "The Governor" intends to abolish the use of Canal Zone postage stamps approved and issued by the United States Post Office Department for the Canal Zone postal system and to substitute therefore stamps supplied by the Republic of Panama and that he intends to recognize in the Canal Zone the exequaturs issued by the Republic of Panama to foreign consuls to the same extent that such exequaturs are recognized in the Republic of Panama.

Plaintiff prays for a final injunction to restrain the defendants for he says that Fleming's acts and contemplated acts are done or to be done with the consent or at the direction of Vance and that such acts are contrary to the laws of the United States and that the sovereignty of the United States in the Canal Zone will be placed in jeopardy or tend to be relinquished without due process of law to the irreparable damage of plaintiff and other citizens and taxpayers of the United States and residents of the Canal Zone.

An attempt was made to serve summons upon defendant, Vance, as Secretary of the Army, by leaving a copy of the summons and complaint and amended complaint with the Governor of the Canal Zone. A motion to quash the service and return of service was made by the District Attorney as counsel for the defendants on the ground that the Governor of the Canal Zone is "neither an agent nor a representative of the said defendant authorized by appointment or by law to receive service of process" and the motion was sustained.

A further amended complaint was filed by the plaintiff which reiterates the facts alleged in the first amended complaint and sets out additional matter descriptive of the United States' interests in the Canal Zone. This pleading delineates the acts complained of more fully but asks for the same relief previously prayed and

further requests that defendants, their employees, agents or successors in office be restrained from committing or omitting any act reasonably tending to relinquish or derogate the sovereignty of the United States in the Canal Zone.

Process was thereafter served on Secretary Cyrus Vance as defendant by Gerald A. Doyle whose affidavit states that he sent to Vance at his Washington address a copy of the alias summons and amended complaint by "registered mail."

The defendants through their attorneys of the Department of Justice moved to quash the purported service upon Secretary Vance and moved to dismiss the complaint on the grounds that plaintiff lacks standing to sue and that the court lacks jurisdiction of the subject matter.

### I

### Motion to Quash

■ An attempt to have service upon the defendant, Vance, was made by the plaintiff by sending him a copy of the summons and amended complaint by "registered mail" in an attempted compliance with 28 U.S.C. § 1391(e) (Supp. 1962), which is as follows:

"(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

As stated in defendants' brief, " * * the statute, by its terms, is limited to actions brought 'in any judicial district' ". Judicial districts are defined, as used in Title 28, to mean "the districts enumerated in Chapter 5 of this title." 28 U.S.C. § 451. The Canal Zone is not included and it would follow therefore that § 1391(e) above is not applicable.

The House and Senate reports contain identical statements of the purpose of this act.

"The purpose of this bill is to make it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U. S. District Court for the District of Columbia." (House Report 536, 87th Cong., 1st Sess.; see Senate Report 1992, 87th Cong., 2d Sess.)

The "United States District Court for the District of the Canal Zone" is not a United States district court within the meaning of Title 28, U.S.C., Chapter 5. Congress has defined "district courts" to be those courts enumerated in 28 U.S.C. §§ 81–144 and the Canal Zone court is not included.

In establishing the jurisdiction and venue of the District Court of the Canal Zone further evidence is found on the part of Congress to differentiate for in Title 3, Section 142 of the Canal Zone Code it uses the following language in conferring admiralty jurisdiction:

"The jurisdiction in admiralty conferred upon the district court and the district judge is the same as is exercised by the *United States district courts* and the *United States district judges.*" (Italics supplied.)

Proper service has not been made upon the defendant, Vance, and the motion to quash is sustained.

## II

### The Flag

 1. The first question raised is the most inflammatory and has to do with the flying of the "flag of the Republic of Panama and the flag of the United States" in the Canal Zone at equal heights on separate flag poles in various places described in detail in the complaint. Panama has agitated the question for some time demanding that the flag of that Republic be flown throughout the Canal Zone wherever the United States standard is flown. Riots occurred in 1959 over the question when the Canal Zone authorities rejected a "flag march" emanating from Panama.

Plaintiff's position is that this act on the part of defendants is in violation of Title 36, Section 175(c) of the United States Code originally adopted December 22, 1942 and which is as follows:

"No other flag or pennant should be placed above or, if on the same level, to the right of the flag of the United States of America, except during church services conducted by naval chaplains at sea, when the church pennant may be flown above the flag during church services for the personnel of the Navy. No person shall display the flag of the United Nations or any other national or international flag equal, above, or in a position of superior prominence or honor to, or in place of, the flag of the United States at any place within the United States or any Territory or possession thereof: Provided, That nothing in this section shall make unlawful the continuance of the practice heretofore followed of displaying the flag of the United Nations in a position of superior prominence or honor, and other national flags in positions of equal prominence or honor, with that of the flag of the United States at the headquarters of the United Nations."

He assumes the position that the portion of the Section 175(c) that was adopted as an amendment to the existing act on July 9, 1953 and forms the second sentence of the paragraph means that no flags of any other nations shall be flown at "equal heights" with the flag of the United States and that as it was adopted as an amendment, it supercedes any statements in Section 175 which might be in conflict with it.

A detailed and careful study of the act with its legislative history demonstrates clearly that plaintiff's position is erroneous. The language is somewhat ambiguous and without the legislative history is subject to misinterpretation.

The first sentence of paragraph (c) of course contemplates that the flags of other nations should be flown at the same height in using the words " * * * if on the same level, to the right of the flag of the United States of America * * *."

In looking at paragraph (g) of Section 175, the following language is found:

"When flags of two or more nations are displayed, they are *to be flown from separate staffs of the same height.* The flags should be of approximately equal size. International usage forbids the display of the flag of one nation above that of another nation in time of peace." (Italics supplied.)

The second sentence in paragraph 175 (c) was adopted as the consequence of a bill (S. 694) introduced by Senator Edward Martin of Pennsylvania. At the time the amendment was laid before the Senate after having been passed by the House of Representatives, Senator Knowland interrogated Senator Martin concerning the purposes of the bill. The following questions and answers appearing in 99 Congressional Record 7280 establish without doubt that the word "equal" as used in the sentence does not mean equal height as argued by plaintiff but equal prominence or honor.

"MR. KNOWLAND. Mr. President, I have some questions which I should like to ask of the distinguished Senator from Pennsylvania. (Mr. Martin)

"Would this bill require that the American flag be flown at a higher elevation or be of a larger size than any foreign or international flag?

"MR. MARTIN. No. Senate bill 694 would not require that the American flag be flown higher or be of a larger size. It simply requires that no foreign flag shall be flown in a position of equal or superior prominence or honor to the American flag.

"MR. KNOWLAND. The existing law, the act of June 22, 1942, title 36 of the United States Code, section 175(c) specifies that 'international usage forbids the display of the flag of one nation above that of another nation in time of peace.' Would this bill be in conflict with that section?

"MR. MARTIN. No. This bill adds a section to that act which reinforces the provisions of that act by requiring that the American flag be given the customary place of prominence and honor when flown with foreign or international flags on United States soil.

"MR. KNOWLAND. Would this bill require that the American flag be flown in the place of prominence and honor at United Nations Headquarters?

"MR. MARTIN. This bill has a specific proviso which authorizes 'the continuance of the practice heretofore followed of displaying the flag of the United Nations in a position of superior prominence or honor at the headquarters of the United Nations.' This is because of the special agreement we have with the United Nations under the Headquarters Agreement."

At the same meeting and quoted in 99 Congressional Record 7281, Senator Martin introduced a statement for the Record which among other things said:

"S. 694 is good Flag Day material, Mr. President.

"It provides that no flag shall be flown in a position equal to or superior to the flag of the United States anywhere in the United States, its Territories, or possessions. If the flag of the United States is displayed in conjunction with the flags of other nations, our flag shall be given the superior position of honor. *This does not necessarily mean that the flag of the United States must be larger in size or flown at a greater height on all occasions.*" (Italics supplied.)

In United States Code Congressional and Administrative News 83rd Congress, First Session, 1953, page 1850, the legislative history of the amendment was carried in Senate Report No. 258 as follows:

"The Committee on the Judiciary, to which was referred the bill (S. 694) to prohibit the display of flags of international organizations or other nations *in equal or superior prominence or honor* to the flag of the United States except under specified circumstances, and for other purposes, having considered the same, reports favorably thereon, with amendments, and recommends that the bill, as amended, do pass." (Italics supplied.)

It is therefore quite clear that the "equal height" interpretation of the plaintiff is erroneous and the position of honor at the right of the Panamanian flag is in compliance with the statute. As plaintiff complains only of the "equal height", he has not made out a cause of action and his complaint must fail on this point.

■ With plaintiff's original complaint filed October 26, 1962 he attached a sheet of "Points and Authorities" which included therein a citation to P.L. 86–451, 74 Stat. 93 and 101, May 13, 1960 in which Congress directed that no part

of the appropriation contained in title II of the act should be used to construct a flag pole, platform, or other device for the purpose of displaying the flag of Panama in the Canal Zone.

This act as shown at page 93 of the citation was for monies appropriated for the fiscal year ending June 30, 1961 and has no bearing on the present action.

### The Postage Stamps

2. Congress has imposed upon the Governor the duty of "prescribing the postage stamps" in the Canal Zone and does not limit him to place of purchase nor type of stamps. The language is clear and unequivocal and leaves the matter up to his executive discretion.

Canal Zone Code, Title 2, Section 1132:

"Maintenance and operation of postal service

"(a) *The Governor shall:*

"(1) maintain and operate a postal service in the Canal Zone, including a money-order system, a parcel-post system, a postal-saving system, and other services necessary or convenient in connection with the postage service;

"(2) establish and discontinue post offices;

"(3) except as provided by subsection (b) of this section, prescribe the postage rates; and

"(4) *Prescribe the postage stamps and other stamped paper which shall be used in the service.*" (Italics supplied.)

Plaintiff does not attack the act itself as being unconstitutional nor illegal and there is question as to whether he would have standing to sue in the event he were to make the attempt as there is considerable authority to the contrary. This court does not have to decide that question as it is not raised and the authority to prescribe the stamps for the postal service in the Canal Zone is clearly up to the executive discretion and judgment of the Governor. This court is bound by the well known rule of law that the executive branch of the government has the right to make decisions and exercise discretion without interference from the courts. The courts will intervene ordinarily only when there is a failure on the part of the executive to perform or not perform an act which is ministerial in nature and no discretion is necessary. McConaughey v. Morrow, Dist. Ct. Canal Zone, Bal. Div. 1922, 279 F. 617; 263 U.S. 39, 44 S.Ct. 78, 68 L.Ed. 153.

### The Exequaturs

3. Exequatur is defined in Webster's Unabridged Dictionary as "a written official recognition and authorization of a consular officer, issued by the government to which he is accredited."

As stated above, plaintiff claims that the defendants intend to recognize in the Canal Zone the exequaturs issued by the Republic of Panama to foreign consuls to the same extent that such exequaturs are recognized within the territory of the Republic of Panama.

This may be tantamount to relinquishing in part, the position of sovereignty that the United States has assumed and maintained in the past and may affect the plaintiff and other citizens and taxpayers of the United States in the Canal Zone. However, the court can not question such a decision on the part of the executive branch of the government.

The decision to recognize the exequaturs issued by the Republic of Panama although made as a result of an agreement made by the "Representatives of the Governments of the Republic of Panama and the United States of America", appointed to discuss points of dissatisfaction in United States-Panamanian relations with regard to the Canal Zone, of which defendant Fleming was a member, was actually decided upon by the Department of State of the United States and implemented through a "Joint Communique and Aide-Memoire" issued January 10, 1963 setting forth arrangements concluded between the Government of the United States of America and the Government of Panama with respect to certain matters pertaining to the Panama

Canal Zone. An authenticated copy of the Department of State press release, Number 17 of January 10, 1963, containing a true copy of the Joint Communique and Aide-Memoire bearing the seal of the Department of State of the United States of America and executed by Pattie H. Field for Dean Rusk, Secretary of State, showing this to be true was filed with defendants' "Memorandum In Reply To Plaintiff's Opposition to Defendants' Motions To Dismiss And To Quash Service On Defendant Vance." (The Joint Communique is contained in 48 Department of State Bulletin 171 dated February 4, 1963.)

The Joint Communique and Aide-Memoire stems directly from the acts of the President of the United States, John F. Kennedy, and President Roberto F. Chiari of the Republic of Panama in an agreement reached in Washington on June 12-13 (1962) and is, of course, an action of the executive branch of our government.

■ In the field of foreign relations, the courts have little or no voice. By our system of co-ordinate branches of government—executive, legislative and judicial—the burden of dealing with foreign powers has through the wisdom of the framers of the Constitution been committed by that instrument to the executive and the legislative. In Oetjen v. Central Leather Company, 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1917), the Supreme Court said:

"The conduct of our foreign relations of our Government is committed by the Constitution to the Executive and Legislative—'the political'—Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision."

■ The plaintiff has the right as a citizen to express himself at the polls in selecting those to be charged in the executive and legislative branches with the high responsibility of dealing with foreign powers but he has no right to challenge the conduct of these affairs in the courts. If this were so, our government would be hopelessly embroiled in a tangle of litigation, political in nature, instigated by disgruntled citizens who do not agree with certain foreign policies. Such litigation would only hamper and embarrass our government and would be vain when decided for it would not be binding upon the countries with whom the government was dealing.

The question of exequaturs is one that rests with the executive and the plaintiff has no standing to sue nor right to injunctive relief.

### III

### Conclusion

■ Whether or not any or all of the acts complained of by the plaintiff diminish or tend to diminish the sovereignty of the United States in the Canal Zone is a matter of speculation. What nation is sovereign is between the treaty making powers of the nations involved and is not a question that is up to the courts.

A decision by the courts that the United States is or is not sovereign in the Canal Zone would be unilateral in effect. It would be binding on the people of the United States but would have no force on the people of other nations. Sovereignty of a nation over a given territory rests in first analysis over its agreed dominance and authority over the area and in last analysis its power to retain that control.

It may well be that the acts of defendant, Fleming, in raising the flag of Panama daily beside that of the United States, using stamps supplied by Panama and recognizing in the Canal Zone exequaturs issued by the Republic of Panama are against the interests of the United States and its citizens and taxpayers. Certainly such actions are confusing and not understood. The flying of two national flags side by side in a disputed territory for an undeclared purpose is a position of weakness that can lead but to further misunderstanding and discord.

The people living in the Canal Zone are entitled to police protection, adequate courts, orderly government, health programs and all of the things that stem from the sovereign. When the sovereign is uncertain and in doubt these fundamental rights are of necessity weakened and may be lost.

 Defendant Fleming's actions may not be to plaintiff's best interests but he is not acting in violation of the law and the Canal Zone Code is specific in denying injunctive relief to a petitioner against a public officer who is exercising that office in a lawful manner.

Canal Zone Code, Title 5, Sec. 322, para. (b)

"an injunction may not be granted to:

\* \* \* \* \* \*

"(4) prevent the exercise of a public or private office, in a lawful manner, by the person in possession."

For these reasons the plaintiff's prayer for an injunction is denied and the complaint is dismissed.