John C. Marbach, J.
Petitioner applies for an order enjoining the respondents from flying the United States flag at half mast as an expression of sorrow and sympathy at the death of the four students at Kent State University and to memorialize the 40,000 Americans who have lost their lives in the service of their country in Vietnam.
The relevant facts are not in dispute. On May 8, 1970, the principal of the Peekskill High School advised the Superintendent of Schools that in response to a request from some students and faculty, he had given them permission to circulate a petition stating in part that it would be fitting that the flags of the Peekskill City School District be flown at half mast on Monday, May 11,1970, in memory of the four students killed at Kent State. The principal recommended that permission be granted. The superintendent discussed the request with his principal and expressed his feeling that the flag could not be used as a form of peaceful dissent. The superintendent also *158 expressed concern that the lowering of the flag would be a prejudgment of the events which had transpired at Kent State.
The superintendent then discussed the request with the president of the board of education, who suggested that it would be more fitting and appropriate to memorialize the American soldiers killed in Vietnam. The president stated that it was his opinion that the responsibilities of the board to the students rested in providing the students with all facets of contemporary issues. The president stated that he believed that his fellow board members would support his idea and, therefore, the board was not polled.
The principal then returned to the student representatives and presented them with three propositions. The first stated that the flag could not and was not to be used as a form of peaceful dissent. The second was that if the students wished to memorialize any group of Americans, the most appropriate would be the more than 40,000 Americans who have lost their lives representing their country in Vietnam; and the third included the students’ request that they express the sympathy of the student body at Peekskill High School to the student body at Kent State. This was accepted by the student representatives. The petition to lower the flag at all the city schools was denied but was approved to the extent that the flag at the high school wherein the petitioners attended school was to be lowered.
On May 10, 1970, the Veterans’ Council, of which petitioner is a member, met and invited the school board and administration to explain their position. Later that evening, a meeting was held at the home of the president of the board. The veterans stated that they would take whatever steps were necessary to see that the flag was not lowered.
The board then decided to defer the lowering of the flag pending the resolution of this controversy.
Respondents have expressly stated in their papers and in open court that they are waiving any procedural objections they might have to this proceeding in order to obtain a speedy judicial determination.
Respondents’ position, simply stated, is that the issue of whether or not the flag is lowered to half mast is a matter solely within the discretion of the local board of education. Respondents contend that the flag is flown at half mast in the school district in memory of deceased students, teachers, school board members or school district personnel as the board may determine. It is their position that lowering the flag to half mast to ■ commemorate the stated intention of the students and faculty *159 is an analogous situation. Respondents further illustrate their contention by pointing out other instances where the flag is flown at half mast in an attempt to justify the proposed action.
Petitioner argues that it is the duty of the superintendent and the board to comply with the proper observance of flag etiquette and to fly the flag at full mast pursuant to its own regulations.
There is a paucity of law on the specific question before this court. Both parties have confined their legal arguments to their view of the applicable codes, statutes, regulations and custom, although petitioner raised the issue of the lowering of the flag as an expression of political dissent in his oral argument. What authority there is will be covered under the heading of Federal, State and local codes, statutes and regulations.
The issue in this action is whether the flag should be lowered to half mast in response to a petition from students and faculty as an expression of sympathy for the four dead Kent State students and the Vietnam war dead. The answer is no.
FEDERAL
Lack of uniformity in the matter of flag display pertaining to civilian matters led to the adoption of a universal code in 1923 at a conference called by the American Legion. This code had no binding Federal authority but it was generally followed. A joint regulation of Congress, on June 22, 1942, enacted a Federal flag code (U. S. Code, tit. 36, §§ 171-178). In 1954, President Eisenhower, in proclamation No. 3044, March 1, 1954, proclaimed rules with respect to the display of the flag at half staff upon the death of certain designated officials and former officials as a guide to the people of the Nation. Title 36 is not intended to proscribe behavior. Rather, it is fashioned as an expression of prevalent custom and usage regarding the display of the American flag; (U. S. Code, tit. 36, § 173; State of Delaware ex rel. Trader v. Hodsdon, 265 F. Supp. 308), involving the placing of the United Nations flag above the United States flag. This court agrees with respondents that the United States Code provisions are not to be accorded the full weight of statutory proscription but finds that they are an expression of custom and usage which is designed for and should be used by civilian authorities, including school districts.
STATE
The Education Law of the State of New York, section 418 (Purchase and display of flag); section 419 (Display of flags in *160 assembly rooms); section 420 (Bules and regulations to be established by school authorities for the proper care, custody and display of the flag); and section 802 (Instruction relating to the flag; holidays); section 801 (Courses of instruction in patriotism, citizenship and in certain historic documents) are the applicable statutory provisions governing flag use and display in our schools. They have been held to be constitutional in other fact situations (People ex rel. Fish v. Sandstrom, 279 N. Y. 523), and no claim has been advanced that the students and faculty have a constitutionally protected right to have the flag flown at half mast. The flag regulations of the State Commissioner of Education are contained in title 8. They determine the material and size of the flag (8 NYCRB 108.2); the manner and place of display (8 NYCRB 108.3); the care of the flag (8 NYCRB 108.4) and the pledge to the flag (8 NYCRB 108.5). These regulations are constitutional and do not contravene either the United States Constitution (1st and 14th Arndts.) or the New York State Constitution (art. I, § 3; art. XI, § 3; see Matter of Lewis v. Allen, 11 A D 2d 447, affd. 14 N Y 2d 867). Both the statutes and the regulations of the Commissioner are silent on the narrow issue at bar but again they are mentioned to indicate the spirit and intent of the law and regulations of our State concerning the flag.
LOCAL REGULATION'S
The school district itself has regulations for the care and display of the flag. These regulations were promulgated on November 1, 1964. They were enacted under the statutory authority of section 420 of the Education Law. Section A provides that flags must be flown at full staff on every day that school is in session and on certain enumerated holidays. Section B (2) and (3) provides that the flag may be flown at half mast in those situations where, as indicated above, a former board member, present employee, teacher, student, clerk or custodian has passed away. Section B (4) provides that all flags shall be put at half mast for special periods of mourning as designated by the President of the United States or the Governor. Section B (5) states that in all cases not specifically covered by this bulletin, the building principals are encouraged to use discretion in caring for and displaying the flag. Section B (5) is the predicate for respondents’ contention that the lowering of the flag to half mast in response to student and staff requests was a proper discretionary act of the board.
*161 The court finds that the flag must he flown at full mast on every day that the school is in session pursuant to local regulation, subject to those specifically enumerated exceptions in the United States Code, State law, and Commissioner of Education regulations or local regulations or consistent with established local custom and practice.
The American flag is the symbol of our country, of the ideals embodied in our Constitution, and is the symbol of the spirit which should animate our institutions. (People ex rel. Fish v. Sandstrom, 279 N. Y. 523, supra, per Judge Lehman.) It is the emblem of freedom in its truest and best sense, signifying government resting on the consent of governed; liberty regulated by law; the protection of the weak against the strong; and security against the exercise of arbitrary power. (Minersville Dist. v. Gobitis, 310 U. S. 586 [Justice Frankfurter] .) In recognition of the symbolic function served by our flag, the flag has traditionally been flown at full mast to be lowered only in commemoration of the death of a personage of National or State standing, or of a local serviceman, official or public servant who had contributed to the community. The board’s own regulations enumerate those instances where the flag may be lowered from its normal position of full mast. The board’s regulations, therefore, set up a general policy of flying the flag at full mast with the exceptions specifically provided for. None of these students fit into a specifically enumerated exception of the board’s regulations since they were neither residents of the school district nor formerly students in the school district. If they were, then there would be some basis for flying the flag at half mast, since it could then be argued that the spirit, if not the letter, of the local regulations was intended to encompass such a situation. It is, therefore, apparent that there is no provision in the board’s own regulations which would authorize the proposed conduct except the provision giving the board discretion to do so.
This court agrees with respondents’ distinguished counsel that local school districts, governmental service and fraternal organizations in their discretion sometimes fly the flag at half mast to commemorate deaths of volunteer firemen, teachers and public officials. The court sees nothing wrong with the board doing so in these types of cases since, in each instance, it is to commemorate the death of an individual or group of individuals who have served the community which is memorializing them, either directly by being employed or active in the community, *162 or indirectly by being active in the service of the State or country. The facts of this case, however, are clearly distinguishable from the situations cited by respondents.
This court cannot close its eyes to what has been argued before it and what is obvious to all concerned with this case. The request to lower the flag was based on the death of four students who were shot in the student demonstrations against the policies of our Government in Southeast Asia. All Americans sympathize with the families of these students. There is a legitimate difference of opinion over governmental policy in this area. There has been considerable debate over the forms utilized to express dissent to these policies, but all could agree that the tragic death of these four students occurred in an atmosphere of an expression of political dissent on the campus of Kent State University. The stated intention of the Peekskill students is to express sympathy for their deaths, which we all share, but the unmistakable fact remains that the lowering of the flag in this instance is related to an expression on behalf of these students and faculty of an idea which in its origins and in its totality involves an expression of a political concept.
The flag should not be a vehicle for the expression of political, social or economic philosophy. Nothing in past custom and usage, or existing statute and regulations authorizes the school district or the president of the board of education either on its own motion or at the request of its students or faculty to lower the flag to half staff to reflect approval or disapproval of the popular cause of the day, no matter how valid the cause or who is involved in promulgating it. If the flag were to be lowered to half mast every time an interest group brought pressure to bear on a' board, the children in the schools and the community, at large would be witness to our flag being raised and lowered on an ad hoc basis, perhaps several times a year.
Our laws and our courts have consistently recognized that the flag and all that it symbolizes occasion deep emotional feeling in many people (see Halter v. Nebraska, 205 U. S. 34; People v. Radich, 26 N Y 2d 114). Indeed, the United States Supreme Court has noted that, in the past, insults or indignities to the flag, real or imagined, have occasioned wars and riots and the alleged violations were sometimes punished summarily. This statement is at least as true today as it was in 1907. (Halter, supra.) The veterans’ groups involved here stated that they would take all necessary steps to prevent the lowering of the flag. In their view, the lowering of the flag would defeat the object of maintaining the flag in what they regard as its *163 proper position to signify the flag as an emblem of National power and National honor (see People v. Radich, supra; Hoffman v. United States, 256 A. 2d 567 [Ct. of App., D. C., 1969]; People v. Cowgill, 274 Cal. App. 2d 923, app. dsmd. 396 TJ. S. 371, for cases involving a different use and display of the American flag). A confrontation was imminent which could only have had a negative effect on the community. The feelings engendered on both sides of this issue are the very reason this court finds that respondents should not involve themselves in this emotionally charged area.
In conclusion, this court agrees with the respondents’ own statement to the students and faculty that the flag could not and was not to be used as a form of dissent. The board may display the flag in a fashion consistent with established National, State or local policies, customs and usages or its own regulations, but in the opinion of this court the lowering of the flag to half mast as an expression of political dissent is not the proper area for board regulation or discretion (Education Law, § 420).
In so finding that the board should not exercise its discretion in this area, the court compliments both the board and its counsel for its handling of a difficult situation. In agreeing to submit this matter to the court, all involved have acted in the best American tradition. The court thanks counsel for their assistance. Application granted to the extent indicated herein.