Alvin A. HOLMES, Individually and as a Representative in the Alabama State Legislature, Plaintiff,

v.

George C. WALLACE, Individually and as Governor of the State of Alabama, et al., Defendants.

Civ. A. No. 75–390–N.

United States District Court, M. D. Alabama, N. D.

Feb. 12, 1976.

Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., for plaintiff.

Charles M. Crook, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for defendants.

## ORDER

VARNER, District Judge.

This cause is now presented upon the motion to dismiss filed herein November 18, 1975, as amended January 7, 1976, upon which oral argument was heard in this Court on January 16, 1976. The action is brought upon two theories of liability. Plaintiff alleges that the flying of the flag of the former Confederate States of America immediately below that of the State of Alabama on a halyard atop the Alabama State Capitol in Montgomery, Alabama, together with the flying of the United States flag elsewhere on the Capitol grounds at an ele-

vation lower than that occupied by the Confederate flag, constitutes a violation of 36 U.S.C. § 175 which provides, in pertinent part, as follows:

"No person shall display the flag of the United Nations or any other national or international flag equal, above, or in a position of superior prominence or honor to, or in place of, the flag of the United States at any place within the United States or any Territory or possession thereof: *Provided*, That nothing in this section shall make unlawful the continuance of the practice heretofore followed of displaying the flag of the United Nations in a position of superior prominence or honor, and other national flags in positions of equal prominence or honor, with that of the flag of the United States at the headquarters of the United Nations."

Plaintiff alleges that this Court has jurisdiction by virtue of 28 U.S.C. § 1331 to remedy this alleged violation of the Federal Flag Code. He further alleges that the display of flags above described is also a violation of his rights under the Thirteenth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and § 1985, claiming jurisdiction pursuant to 28 U.S.C. § 1343.

In reply to Plaintiff's claim that the Defendants are in violation of § 175(c) which constitutes a part of the so-called "flag code" of the United States, Defendants maintain among other contentions that § 175(c) provides no sanctions against violators and was not intended to proscribe but merely to prescribe conduct and that Plaintiff has no standing to complain of the alleged violation of this section.

It appears that § 175(c) has been considered by only three reported cases, only two of which are federal cases, even though it has been on the law books in its present form since 1953. Both federal cases, however, have concerned the same portion of the section involved in this action.

Concerning the absence of statutory sanctions against noncompliance with the

usages prescribed in § 175(c) and other provisions of the United States Flag Code (36 U.S.C. §§ 173–178), the Court in *State of Delaware ex rel. Trader v. Hodsdon*, 265 F.Supp. 308 (D.Del.1967), made the following analysis:

"There is yet another reason for dismissing the complaint herein. The action is founded upon the defendant's alleged violation of 36 U.S.C.A. § 175(c) (1953). Title 36 is not intended to proscribe behavior. It is fashioned as an expression of prevalent custom regarding the display of the American flag. Section 173 thereof so stated: 'The following codification of existing rules and customs pertaining to the display and use of the flag of the United States of America is established for the use of such civilians or civilian groups or organizations as may not be required to conform with regulations promulgated by one or more executive departments of the Government of the United States.'

"It is apparent that the sections are a codification of existing 'rules and customs' and are intended for the 'use' of people not required to conform with other regulations. If the purpose is to compel certain behavior then the selection of the word 'use' is odd draftsmanship. Further, § 175(c) provides that 'no other flag * * * should be placed above' the American flag. Again, a strange choice of language if the codification is intended to mandate behavior and not merely to influence it.

"Further, whenever in Title 36 certain behavior was intended to be absolutely proscribed a specific section followed attaching penalties. For example, § 182(a–c) relates to service lapel buttons and who is entitled to wear them. Immediately following these sub-sections appears § 182d which provides the penalties for violation of § 182(a–c). If Congress specifically provided for penalties to attach to § 182(a–c) and did not so provide with regard to § 175 then the implication is clear that § 175 was intended merely as an ex-

pression of proper usage, not to mandate behavior." At page 310.

In *Doyle v. Fleming*, 219 F.Supp. 277 (D.Canal Zone, 1963), the Court considered a challenge to the practice of the Governor of the Canal Zone in flying the flag of the Republic of Panama at an equal height with and alongside that of the United States of America. The Court concluded that, because the practice alleged by plaintiff did not come within the prohibition of § 175(c), plaintiff did not make out a cause of action under the statute:

"It is therefore quite clear that the 'equal height' interpretation of the plaintiff is erroneous and the position of honor at the right of the Panamanian flag is in compliance with the statute. As plaintiff complains only of the 'equal height', he has not made out a cause of action and his complaint must fail on this point." At page 282.

Plaintiff in the instant case cites *Doyle* for the proposition that a district court has jurisdiction to hear a cause arising under this section. This contention is apparently in response to the alternative holding of *Delaware ex rel Trader*, supra, that the district court had no jurisdiction under § 1331 because of a lack of a sufficient amount in controversy and that no special jurisdiction statute exists relative to § 175(c). The *Doyle* court did not discuss the question of jurisdiction or jurisdictional amount. It is to be noted that in *Doyle* the § 175(c) claim was only one of several practices complained of. In the course of its opinion, the *Doyle* court did find, moreover, that:

"The 'United States District Court for the District of the Canal Zone' is not a United States district court within the meaning of Title 28, U.S.C., Chapter 5. Congress has defined 'district courts' to be those courts enumerated in 28 U.S.C. §§ 81–144 and the Canal Zone court is not included.

"In establishing the jurisdiction and venue of the District Court of the Canal Zone further evidence is found on

the part of Congress to differentiate * * * ." At page 280.

This conclusion is one basis upon which the *Delaware ex rel Trader* Court distinguished *Doyle*:

"The plaintiff cites the case of *Doyle v. Fleming*, 219 F.Supp. 277 (D.Canal Zone 1963), for the proposition that the District Courts have jurisdiction over Title 36 violations. The Court therein did not consider the jurisdictional question, nor did it expressly pass on the interpretation to be given to § 175(c). However, as pointed out in the Court's opinion, the District Court for the Canal Zone is not a regularly constituted District Court. 219 F.Supp. at 280. The customary limitations upon the jurisdiction of United States District Courts do not apply to such territorial courts. For this reason the *Doyle* case is distinguishable." At page 310.

If there are no available sanctions for violation of § 175(c) or if Plaintiff has no standing to complain of its violation (see below), it will be unnecessary for this Court to confront the issue of jurisdiction in any greater detail.

The conclusion of the District Court of Delaware, which as demonstrated above is not in conflict with the *Doyle* case, that no sanctions exist for violation of § 175(c), which is not intended to proscribe conduct, is also the conclusion of the New York Supreme Court as to the flag code generally. *Lapolla v. Dullaghan*, 63 Misc.2d 157, 311 N.Y.S.2d 435 (N.Y.1970).

 An examination of the flag code section of Title 36 as a whole leads to the conclusion that §§ 173–178, as well as the associated §§ 170–173, are not intended to proscribe conduct but are merely declaratory or advisory. The language of § 173 and the recurrent use of the word "should", as pointed out by the Court in *Delaware ex rel. Trader v. Hodsdon*, supra, are indicative of a lack of penal purpose.

It might be argued, however, that the pertinent part of § 175(c), which al-though imbedded in the flag code was independently added by amendment in 1953, represents an exception to the general non-penal intent, as suggested by its use of the word "shall" and its proviso that the customary display of flags at U.N. Headquarters in New York shall not be made "unlawful" by the terms of the amendment. Senate Bill 694, approved as Public Law 107 (Chapter 183) on July 9, 1953, which embodies the relevant words of § 175(c), stated in its subtitle that it was: "An Act to prohibit the display of flags of international organizations or other nations in equal or superior prominence or honor to the flag of the United States except under specified circumstances, and for other purposes." Senate Report No. 258 (May 12, 1953), in support of S. 694, contained the following language:

"It would appear, therefore, that Federal laws would or should have been enacted long since *making it an offense* against the United States for anyone to show disrespect, or to fail to show proper respect, toward the United States flag anywhere within the jurisdiction of this Government, but that has not been done. It now has become a sad necessity to take positive action to protect and uphold the dignity and honor of our flag.

"It is the opinion of many that there are some so-called internationalists in this country who are overzealous in their efforts to completely subordinate the sovereignty of our Nation to an organization composed of many nations, some of which are notoriously subservient to another nation. Every individual American owes, and most, at one time or another, have sworn, allegiance to the United States flag. It can safely be said that not one of those individuals intended to owe, or swear allegiance to any other flag or group of flags. Anyone, especially one endowed with certain authority conferred upon him by the people of this Nation, who attempts to transfer, by proxy, the allegiance of those individuals, has betrayed his public trust and is

no longer worthy of the confidence that should go with an official position in our Government." (emphasis added) 2 U.S.Code Cong. & Admin.News 1850 (83rd Congress, 1st Sess. 1953). Standing alone, these expressions would seem to indicate a purpose to make display of the flag in an unauthorized manner a criminal offense punishable by law. Against this conclusion, several arguments may be urged. Foremost among these is the undoubted fact that Congress, while articulating the desirability thereof, did not and has never provided any explicit remedy for violations of § 175(c).[1]

Plaintiff's attempt to state a cause of action under 42 U.S.C. §§ 1983 and 1985 must likewise fail. The allegations of the complaint do not frame a claim within § 1985, and Plaintiff has not seriously attempted in argument or by brief to justify proceeding under § 1985.

█ Under § 1983, Plaintiff can gain relief only for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. No such right, privilege or immunity is involved in the instant action.

As previously set forth in this opinion, it is the finding of this Court that 36 U.S.C. § 175(c) does not create any rights in private individuals. Plaintiff has not alleged or shown any other statutory right belonging or appertaining to him, either State or federal, which is invaded by the practices sought to be enjoined herein. This Court has found no case under § 1983 in which recovery was allowed for Plaintiff's embarrassment and humiliation in the absence of an invasion of some recognized right to liberty or property. In the rare cases in which displays of certain symbols or insignia, including Confederate flags, have been enjoined, such injunctions have been in the context of the redress of other substantive rights such as the right to equality of educational facilities and instruction. Such injunctions have been held to be necessary in aid of federal court remedies dismantling segregated school systems in a context of substantial likelihood of disruption of educational progress. *Smith v. St. Tammary Parish School Board*, 448 F.2d 414 (5th Cir. 1971). The courts have, however, emphasized the limited and special nature of such action. *Augustus v. School*

---

1. There may be a constitutional question, if the "Flag Code" is considered penal in nature. A line of cases involving the flag desecration statute, 18 U.S.C. § 700(a) [which in sharp distinction to § 175(c) is provided with clear penalties for violation and has been the basis for numerous prosecutions] has upheld the right of Congress to legislate with regard to the national flag, including its mutilation and defacement. *Joyce v. United States*, 147 U.S. App.D.C. 128, 454 F.2d 971 (1971). It has also been stated that, while Congress could have but has not pre-empted the field of regulation concerning the national flag, it is "constitutionally empowered to reasonably regulate *display* of the national emblem." *Parker v. Morgan*, 322 F.Supp. 585 (W.D.N.C.1971) (3-judge court) (emphasis added). However, courts have consistently emphasized the narrowness and specificity of the flag mutilation statute upheld, while striking down many State statutes on the grounds of vagueness and overbreadth, in the interests of preserving inviolate the right to free symbolic speech. In *Hoffman v. United States*, 144 U.S.App.D.C. 156, 445 F.2d 226 (1971), the Court states the following:

"[I]n order for this statute to avoid possible conflict with the Amendment, the curtail-

ment of expression goes no further than the language of the statute clearly requires. See *United States v. Rumely*, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953), and cases cited therein. The legislative history of the present statute demonstrates that Congress was aware of the problem and sought to avoid claims of infringement of the guarantees of the First Amendment by employing in the operative part of the statute language of limited and narrow meaning." At page 228.

See also *Joyce v. United States*, supra, at 984–990; *United States v. Crosson*, 462 F.2d 96 (9th Cir. 1972), cert. den. 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517; *Parker v. Morgan*, supra. In this connection, the opinion of the Court in *Parker* is worthy of particular note:

"We think the line must be drawn at the point of contemptuous physical contact with the clearly defined flag and that physical protection of the flag itself is the outermost limit of the state's legitimate interest. It is absurd to say that one may verbally abuse the flag, but that he may not direct toward it a derisive gesture." At page 590.

Board of Escambia County, Florida, 507 F.2d 152 (5th Cir. 1975). As the Fifth Circuit Court of Appeals has stated in *Augustus* :

"There is a serious question as to whether this case involving what name high school athletic teams will play under, and what flag the school will use for a symbol, could independently gain the attention of a federal court. See *Banks v. Muncie Community Schools*, 433 F.2d 292 (7th Cir. 1970); *cf. Karr v. Schmidt*, 460 F.2d 609 (5th Cir.) (en banc), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972)." 507 F.2d at 155.

 It is, of course, too well established to require citation that Congress has the power to legislate so as to prohibit and eradicate the badges and vestiges of servitude. A State sponsored display of the Confederate flag may offend sensitive descendants of former slaves. It is not inconceivable that the display of the Confederate flag might be legislatively prohibited as such a badge or vestige, although not without possible constitutional problems. It is the opinion of this Court, based on the wording and the legislative history of 36 U.S.C. § 175(c), that Congress had no such intent in passage of the 1953 amendment herein sued upon. That provision of the United States flag code was manifestly directed at other practices whose nature is sufficiently suggested hereinabove.

It is, therefore, unnecessary for this Court to resolve questions of standing, see *Delaware ex rel. Trader*, supra; *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1963), questions of statutory ambiguity, viz., whether the Confederate flag is "any other national or international flag" within the terms of § 175, or questions of fact such as whether the display of our national flag on the Alabama Capitol lawn in its dominant position as the center and highest flag of the avenue of flags is less prominent or less honored than is the flag on the dome of the Capitol. It is, therefore, the

Order, judgment and decree of this Court that said motion to dismiss be, and the same is hereby, granted, and the above-styled cause is hereby dismissed with costs taxed against the Plaintiff, for which execution may issue.