NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), a corporation suing through its Alabama Conference of Branches, Thomas Reed, Alvin Holmes, James E. Buskey, John L. Buskey, William Clark, Patricia Davis, George W. Grayson, Bobbie G. McDowdell, Bryant Melton, Jr., George Perdue, John W.

Rogers, Jr., Lewis G. Spratt, Michael A. Figures, Earl F. Hilliard and Henry Sanders, Plaintiffs–Appellants,

v.

Guy HUNT, individually and as Governor of the State of Alabama; Cecil Humphrey, individually and as Chief of Capitol Security; G. Robin Swift, Jr., individually and as Finance Director, Defendants–Appellees.

No. 89–7245.

United States Court of Appeals, Eleventh Circuit.

Jan. 16, 1990.

Ernestine S. Sapp, Fred D. Gray, Gray, Langford, Sapp & McGowan, Tuskegee, Ala., Gen. Counsel, N.A.A.C.P., Sp. Contribution Fund, Baltimore, Md., for plaintiffs-appellants.

Alex L. Holtsford, Jr., Nix & Holsford, H.E. Nix, Jr., Montgomery, Ala., for defendants-appellees.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

1. 36 U.S.C.A. § 175(c) states:

JOHNSON, Circuit Judge:

Plaintiffs–Appellants, the National Association for the Advancement of Colored People, et al. ("NAACP"), appeal the district court's grant of summary judgment for defendants Hunt, et al. ("the state") on the NAACP's claims under 42 U.S.C.A. §§ 1983 and 1988, 36 U.S.C.A. § 175(c) (the United States Flag Code), the First, Thirteenth, and Fourteenth Amendments to the United States Constitution, and, under Alabama state law, conspiracy to cause malicious prosecution.

## I. STATEMENT OF THE CASE

For some twenty years the confederate flag has flown atop the capitol dome in Montgomery, Alabama. At present, there are three flags flying on a single pole above the dome: the United States flag on top, the Alabama state flag second, and the confederate flag at the bottom.

There is no state statute authorizing or mandating the flying of the confederate flag. Alabama raised the flag on two occasions. The flag was raised in 1961 during the administration of Governor John Patterson for the purpose of commemorating the 100th anniversary of the Civil War. The flag was raised again on the morning of April 25, 1963, the day that United States Attorney General Robert F. Kennedy travelled to Montgomery to discuss with then-Governor George Wallace the governor's announced intention to block the admission of the first black students to the University of Alabama. Regardless of the reason, it is undisputed that the flying of the flag atop the capitol dome has caused much controversy.

In 1975, Alabama state legislator Alvin Holmes filed suit in the Middle District of Alabama alleging that the flying of the confederate flag immediately below the Alabama flag on the capitol dome, with the American flag flown at a lower elevation on the capitol grounds, violated 36 U.S.C.A. § 175 (the U.S. Flag Code),[1] the Thirteenth

No other flag or pennant should be placed above or, if on the same level, to the right of the flag of the United States of America ... No person shall display the flag of the United Nations or any other national or international

and Fourteenth Amendments, and 42 U.S.C.A. §§ 1983 and 1985.[2] The district court held in *Holmes v. Wallace*, 407 F.Supp. 493 (M.D.Ala.), *aff'd without published opinion*, 540 F.2d 1083 (5th Cir.1976) that: (1) section 175 of the Flag Code was merely intended to be declaratory or advisory, and was not intended to proscribe conduct; (2) the plaintiffs did not state a claim under 42 U.S.C.A. § 1985; and (3) the plaintiffs alleged no right of which they had been deprived under 42 U.S.C.A. § 1983.[3]

On February 2, 1988, several members of the NAACP, all of whom were also members of the Alabama legislature, were arrested for criminal trespass at the capitol gates. The NAACP maintains that its members were attempting to "symbolically touch" the capitol fence to express their disagreement with the flag being flown. The state contends that the NAACP members were attempting to scale the security fence and remove the flag forcibly from the dome. The NAACP members were convicted in Montgomery County District Court on January 10, 1989. Appeals of those convictions are pending in the circuit court.

On May 20, 1988, the NAACP filed suit in the Middle District of Alabama against Governor Guy Hunt, Chief of Capitol Services Cecil Humphrey, and Director of Finance Robin Swift ("the state") seeking a declaratory judgment that the flying of the flag atop the Alabama capitol dome violates 42 U.S.C.A. §§ 1983 and 1988, 36 U.S.C.A. § 175, and the First, Thirteenth, and Fourteenth Amendments to the Constitution. The NAACP sought injunctive relief requiring the state to remove the flag from the capitol and prohibiting the state from displaying the flag on capitol grounds. On October 12, 1988, the NAACP amended its complaint to include a challenge to the Feb-

ruary 2, 1988 trespass arrest on the ground that the defendants in this lawsuit conspired to cause the wrongful prosecution of the NAACP members. In its answer, the state raised several affirmative defenses, including *res judicata*.

On December 15, 1988, the district court granted the state's motion for dismissal or summary judgment on the Flag Code issue, civil rights violations under 42 U.S.C.A. §§ 1983 and 1988, and constitutional violations under the Thirteenth and Fourteenth Amendments. The court allowed the NAACP to proceed with its First Amendment claim, but did not address the conspiracy claim. On March 1, 1989, the district court granted the state's motion for summary judgment on the First Amendment claim. The district court also found that the conspiracy claim was unavailable to the NAACP because the prosecutions were not based on wrongful torts and had resulted in conviction of the defendants.

We first consider whether the district court erred in granting the state's motion for summary judgment on the Flag Code claim on the grounds of *res judicata*. We then determine whether the district court erred in granting the state's motions for summary judgment on the NAACP's claims arising under 42 U.S.C.A. §§ 1983 and 1988, and under the First, Thirteenth, and Fourteenth Amendments.

## II. ANALYSIS

█ Our review of a district court grant of summary judgment is plenary; the reviewing court must ask whether any genuine issue of material fact exists, or whether the moving party is entitled to judgment as a matter of law. *Shipes v. Hanover Ins. Co.*, 884 F.2d 1357, 1359 (11th Cir.1989); Fed.R.Civ.P. 56(c). The reviewing court

---

flag equal, above, or in place of, the flag of the United States at any place within the United States or any territory or possession thereof....

Section 175(g) states: "When flags of two or more nations are displayed, they are to be flown from separate staffs of the same height ... International usage forbids the display of the flag of one nation above that of another in time of peace."

**2.** Alvin Holmes is a plaintiff/appellant in the present lawsuit.

**3.** Since the decision in *Holmes,* four resolutions have been introduced in the Alabama legislature seeking to have the flag removed. All four have been defeated.

must view the record in the light most favorable to the non-moving party, with all reasonable inferences taken in favor of that party. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir.1989). The moving party bears the burden of informing the district court of the basis for its motion, after which the non-moving party must make a showing sufficient to support finding the existence of all essential elements with respect to which the non-movant has the burden of proof at trial. Failure to make such a showing appropriately results in summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A. *Res Judicata*

■ The district court granted the state's motion for summary judgment on the issue of violation of the Flag Code, 36 U.S.C.A. § 175, because it found that this issue had already been determined in *Holmes v. Wallace, supra.*[4] A district court's conclusions as to *res judicata* are conclusions of law, and are thus reviewable *de novo* by this Court. *See McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1565 (11th Cir.1987).

■ Federal courts apply the law of the state in which they sit with respect to the doctrine of *res judicata. Id.* Under Alabama law, the essential elements of *res judicata* are: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Hughes v. Allenstein*, 514 So.2d 858 (Ala. 1987) (citing *Wheeler v. First Alabama Bank of Birmingham*, 364 So.2d 1190, 1199 (Ala.1978)). If all of these elements are met, any claim that was or could have been adjudicated in the previous action is precluded. *Id.* If even one element of the four is not met, however, *res judicata* is not applicable. *Fisher v. Space of Pensacola, Inc.*, 461 So.2d 790, 792 (Ala.1984).

■ The decision in *Holmes v. Wallace* was based on the grant of a motion to dismiss. The decision does not indicate whether the court dismissed the claims under Fed.R.Civ.P. 12(b)(6) or 41(b), or whether it dismissed the claims with or without prejudice. In any event, the Supreme Court has clearly stated that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981). *See also Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.1986) (dismissal with prejudice operates as a judgment on the merits unless the court specifies otherwise). Similarly, Fed.R.Civ.P. 41(b) provides that unless the court specifies otherwise, dismissal on the grounds that the facts and law show no right to relief operates as an adjudication on the merits. The *Holmes* decision is clearly a final adjudication on the merits for *res judicata* purposes, and was rendered by a court of competent jurisdiction.

■ Identity of parties concerns two sets of persons. The first set is comprised of those persons who were actual parties in the original action. *Lary v. Ansari*, 817 F.2d 1521, 1523 (11th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Appellant Alvin Holmes clearly falls into this category. He was the plaintiff in *Holmes v. Wallace;* he is a plaintiff/appellant in this action. The second set of persons to whom *res judicata* applies is composed of those persons who are or were in privity with the parties to the original suit. *Ansari*, 817 F.2d at 1523. Privity is defined as "a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." *Hart*, 787 F.2d at 1472 (citing *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir.1977)). Privity exists where the nonparty's interests were represented

---

4. Although the section 1983, Thirteenth Amendment, and Fourteenth Amendment issues were also dealt with in *Holmes,* the district court in the present action did not apply *res judicata* principles to these issues.

adequately by the party in the original suit. *Id.* Privity also exists where a party to the original suit is "so closely aligned to a nonparty's interest as to be his virtual representative." *United Merchants & Mfrs. v. Sanders,* 508 So.2d 689, 692 (Ala.1987).

■ The question of whether sufficient privity exists to warrant application of *res judicata* is a question of law. *Southwest Airlines Co. v. Texas Int'l. Airlines, Inc.,* 546 F.2d at 95. Thus the district court did not err in refusing to send that issue to a jury. Further, it does not appear that the district court erred in finding that sufficient privity existed between Holmes and the present plaintiffs. Like appellant Holmes, all fourteen appellants are Alabama state legislators and all fourteen are members of the NAACP. The NAACP responds that the fourteen appellants in the present case have substantially different interests in the present action than appellant Holmes had in the prior action. They argue that Holmes contended in the prior action that the flying of the confederate flag above the Alabama flag, with the U.S. flag flown elsewhere at a lower elevation, violated the Flag Code and the Thirteenth and Fourteenth Amendments. In this action, the NAACP argues that the flying of the confederate flag anywhere on the capitol grounds in *any* relationship with the American flag violates not only the Flag Code and the Thirteenth and Fourteenth Amendments, but also the First Amendment. The distinction drawn by the appellants is tenuous at best. Alvin Holmes was so closely aligned to the NAACP's interests in the original suit that he was their virtual representative.

■ The final element of *res judicata* requires that the same cause of action be presented in both cases. This Circuit has recognized that "the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." *Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir. 1979) (citing *Stevenson v. International Paper Co.,* 516 F.2d 103, 109 (5th Cir. 1975)). *Res judicata* applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact. *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984) (quoting *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974)).

■ The district court was correct in determining that the causes of action were the same in *Holmes* and the present action. The wrongful act in both *Holmes* and the present case is the flying of the confederate flag atop the capitol. The right claimed in both cases appears to be the right to be free from discrimination symbolized by the location of the confederate flag over the capitol. In *Holmes* the plaintiff alleged that the position of the flag in relation to the American flag violated the Flag Code, the Thirteenth and Fourteenth Amendments, and 42 U.S.C.A. §§ 1983 and 1985. In the present case the appellants allege that the prominent position of the flag violates the Flag Code, the First, Thirteenth, and Fourteenth Amendments, and 42 U.S. C.A. §§ 1983 and 1988. The only distinctions between the two causes of action are: (1) the First Amendment and section 1988 claims were not raised in the first case, and (2) the present plaintiffs are requesting that the flag be removed from the capitol dome entirely, while Holmes requested that it not be placed above the American flag. While it is arguable that the causes of action are different because of the different remedies sought, the rights claimed and the wrongs alleged are almost identical. Further, *res judicata* operates to preclude not only the issues raised in the prior action, but issues which could have been raised in the prior action. *Hughes,* 514 So.2d at 858. Because Alvin Holmes could have raised the same First Amendment and section 1988 claims in the first action, the claims are identical. The action is thus precluded under *res judicata.*

Although the entire claim is precluded by *res judicata,* we proceed nonetheless to discuss the issues not dealt with on the merits in the *Holmes* decision. Because of the controversial concerns raised in this

case, it is important that all issues be laid to rest on the merits.

B. *Statutory and Constitutional Claims*

1. Civil Rights Violations

a. *Claims Raised in District Court*

■ In order to state a cause of action under section 1983, the NAACP must prove: (1) that the confederate flag is flown by individuals acting under the cloak of state authority, *Monroe v. Pape*, 365 U.S. 167, 184–87, 81 S.Ct. 473, 482–84, 5 L.Ed.2d 492 (1961); and (2) that the flying of the flag deprives them of some right, privilege, or immunity secured by the Constitution or by law. *See* 42 U.S.C.A. § 1983.

There is no dispute regarding the "under color of state law" requirement. It seems clear that a flag flown on the state capitol dome is flown under state authority.[5] The parties dispute, however, the question of whether the NAACP has been deprived of any rights. On September 23, 1988, the district court ordered both parties to submit briefs regarding the deprivation of some federally protected right. The NAACP apparently argued that the flying of the flag was "tantamount to holding public property for racially discriminatory purposes" and that it denied its members their rights to equal education, equal economic opportunity, and equal protection. Presumably the NAACP makes these claims under the Fourteenth Amendment.

■ Certainly the NAACP has a right to equal protection of the laws, in education and otherwise. *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The Fourteenth Amendment prohibits states from denying to anyone the equal protection of the laws.[6] As the Supreme Court has stated, however,

the Amendment requires equal laws, not equal results. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). It is true, as the NAACP points out, that a racially motivated statute may be unconstitutional even if it is facially neutral. *Hunter v. Underwood*, 471 U.S. 222, 231–32, 105 S.Ct. 1916, 1921–22, 85 L.Ed.2d 222 (1985). Because there are two accounts of why Alabama flies the flag, however, *see* p. 2, *supra*, it is not certain that the flag was hoisted for racially discriminatory reasons. Moreover, there is no unequal application of the state policy; all citizens are exposed to the flag. Citizens of all races are offended by its position.

■ Further, the NAACP has advanced many discrimination suits in federal and state courts over the 25 years since the flag was raised. Yet it has never requested that the flag be brought down as part of the equitable relief requested in any of those cases. In *Smith v. St. Tammany Parish School Bd.*, 448 F.2d 414 (5th Cir. 1971), the Fifth Circuit upheld an order banning "symbols or indicia *expressing the school board's or its employee's* desire to maintain segregated schools ..." *Id.* at 415 (emphasis in original). The *Smith* decision, however, was based upon the broad discretion vested in the district courts to achieve the constitutional end of desegregation. *Id.* at 415; *cf. Green v. County School Bd.*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). There is no legal basis for prohibiting the flying of a confederate flag on government grounds outside the realm of desegregation effort. The NAACP did not ask that the flag be removed in conjunction with desegregation attempts or other civil rights actions.[7]

---

5. In his deposition, Governor Hunt stated that he felt he had the authority to remove the flag if he so chose.

6. The NAACP has not advanced any due process arguments.

7. In fact, in *Augustus v. School Bd. of Escambia County, Fla.*, 507 F.2d 152, 158 (5th Cir.1975), the Fifth Circuit reversed a district court order

enjoining school officials from using the confederate flag as a symbol and the name "Rebels" for the school's athletic teams. The court found that the symbols were not the sole source of racial tension in the school, and held that "[o]nly as a last resort should the court arrogate to itself the position of administering any part of the day-to-day operation of the school system." *Id.*

These are the only arguments advanced by the NAACP in support of their claim that the flag infringes on a protected right in violation of section 1983. When a non-movant produces no specific factual proof in support of an essential element of its case, summary judgment is appropriate. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

b. *Claims Raised on Appeal*

On appeal, the NAACP argues that freedom from malicious prosecution is a federal right protected by section 1983, *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir.1988), and that the state conspired to have its members maliciously prosecuted in violation of that right. For this reason, they argue that summary judgment should not have been granted.

■■■ There is a federal right to be free from malicious prosecutions. *Strength*, 854 F.2d at 425 (citing *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir.), *cert. denied*, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972)). Private parties who corruptly conspire with state officials to maliciously prosecute an individual also act under color of state law and can be sued by that individual under section 1983. *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980). The plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Strength*, 854 F.2d at 425 (citations omitted). The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy. *Sadie v. Martin*, 468 So.2d 162, 167 (Ala.1985); *Strength*, 854 F.2d at 425.

Under Alabama common law, the elements of malicious prosecution are: "(1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination of the judicial proceeding favorably to the plaintiff, and (5) damages." *Ironworkers Local Union No. 477 v. Holt*, 545 So.2d 816 (Ala.Civ.App. 1989). The plaintiff has the burden of proving these elements, *Ezell v. Southland Corp.*, 541 So.2d 490, 491 (Ala.1989) (citing *S.S. Kresge Co. v. Ruby*, 348 So.2d 484 (Ala.1977)), and each element must be proved in order to prevail. *Ironworkers*, 545 So.2d at 816.

■■ The NAACP has proven that there was a judicial proceeding on January 10, 1989, and that this proceeding was initiated by the state. The NAACP has produced no evidence or facts supporting its arguments, however, that there was no probable cause for the proceeding and that the proceeding was malicious. Further, there seems to be some confusion regarding the element of termination of the judicial proceeding favorably to the plaintiff. The state argues that there has been a termination to the judicial proceeding, but that because the plaintiffs were convicted, the claim for malicious prosecution should fail. The NAACP responds to this argument by claiming that there has been no termination to the proceeding, because it has appealed the conviction. Both termination and a favorable resolution for the plaintiffs are necessary to prove malicious prosecution; thus, under either the state's argument or the NAACP's argument, the NAACP has failed to raise facts necessary to state a claim for malicious prosecution. In the absence of this underlying claim, the conspiracy claim under section 1983 must fail.

■■ Finally, the NAACP argues on appeal that the state violated section 1983 by conspiring to deprive it of its Fourteenth Amendment rights. The NAACP did not raise this claim in any shape or form in the district court. As a general rule, an appellate court will not review a legal issue or theory not presented to the trial court, unless the issue is a pure question of law and the court's failure to consider it would result in a miscarriage of justice. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1144 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982). Because the NAACP has not proven Fourteenth Amendment violations, *see* part III(B)(1)(a), *supra*, failure to consider the conspiracy claim would not result in a miscarriage of justice.

For the foregoing reasons, the district court did not err in granting the State defendants' motion for summary judgment under section 1983. Because section 1988 provides for attorneys' fees only to the prevailing section 1983 plaintiff, the district court was also correct in granting summary judgment on the section 1988 claim.

### 2. Thirteenth Amendment Violations

The Thirteenth Amendment forbids slavery or involuntary servitude. The amendment also gives Congress the authority to enforce the prohibition by appropriate legislation. Part of this authority is the authority to legislate to eradicate badges and incidents of slavery. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968); *Holmes*, 407 F.Supp. at 498. The NAACP's sole argument in support of its claim that the state has violated the Thirteenth Amendment is that the confederate flag, because of its inspirational power in the confederate army during the Civil War and its adoption by the Ku Klux Klan, is a "badge and vestige of slavery." Standing alone, the Thirteenth Amendment does not forbid the badges and incidents of slavery. Congress has not utilized its Thirteenth Amendment enforcement authority to pass legislation forbidding the flying of the confederate flag as a badge or incident of slavery. Because the flying of the confederate flag is not forbidden by federal statute, summary judgment was properly granted. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

### 3. First Amendment Violations

#### a. *Establishment Clause*

The NAACP argues that the confederate flag is the symbol adopted by the Ku Klux Klan. It further argues that the Ku Klux Klan began as a secret religious society, and that Klan members salute the flag as part of their religious rituals. Because of a religious element in Klan ideology, the NAACP argues that the Klan belief system is "religious" for the purposes of the First Amendment, and that the state's flying of the Klan's adopted symbol demonstrates excessive entanglement with religion.[8]

The Establishment Clause of the First Amendment forbids the government from establishing religion. The Supreme Court has created a three-prong test for courts to use in determining whether state action establishes religion. Under *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), a state practice is valid under the Establishment Clause if (1) it has a secular legislative purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster excessive government entanglement with religion.

The flag does not violate the *Lemon* test. It is clear that whether the flag was hoisted to decry integration or to recognize history, the purpose in its hoisting was secular. It is also clear that the primary effect of the flag is not to promote religion; rather, it is to remind citizens, albeit offensively to some, of a controversial era in American history. To violate the Establishment Clause, the religious benefit may not be merely remote or incidental. *Smith v. Board of School Com'rs of Mobile County*, 827 F.2d 684, 691 (11th Cir.1987). Although Klan members might

---

**8.** This Court need not reach the dubious question of whether the ideology of the Ku Klux Klan constitutes religion. The Supreme Court has applied Establishment Clause principles to government display of objects with religious significance. *Allegheny County v. Greater Pittsburgh ACLU*, — U.S. —, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989) (citing *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (display of Ten Commandments on public school walls violates Establishment Clause); *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (city-sponsored creche in private park did not violate Establishment Clause)). The fact that a particular group adopts a symbol, however, does not mean that the symbol subsequently belongs to or represents the group. If this were true, the American flag would become a Klan symbol as well; the entire Alabama capitol building could become a symbol of Klan ideology. Where a symbol has indisputable and widely recognized secular significance, more than adoption by a purported religious group is needed to make the symbol predominantly religious in character.

arguably view the flag in a religious light, such an effect is quite remote.

Finally, the NAACP has produced no evidence that the flag constitutes excessive government entanglement with religion. It produced no evidence of any relationship between the government of Alabama and the Ku Klux Klan, other than the unsupported allegation that the state knew the flag was a Klan symbol when they raised it. Without meaningful evidence of purpose, effect, and entanglement, the Establishment Clause claim must fail. *Lemon*, 403 U.S. at 614–15, 91 S.Ct. at 2112; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

b. *Free Speech*

■■■■ The First Amendment prohibits governments from abridging free speech. *See, e.g., Texas v. Johnson*, —— U.S. ——, 109 S.Ct. 2533, 2547–48, 105 L.Ed.2d 342 (1989) (state flag desecration statute unconstitutionally abridges speech); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 73, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (city ordinance concerning pornographic movie theatres did not violate free speech); *Spence v. Washington*, 418 U.S. 405, 415, 94 S.Ct. 2727, 2453, 41 L.Ed.2d 842 (1974) (arrest under state flag desecration statute violates free speech); *Grayned v. City of Rockford*, 408 U.S. 104, 121, 92 S.Ct. 2294, 2306, 33 L.Ed.2d 222 (1972) (city anti-noise ordinance violated free speech); *United States v. O'Brien*, 391 U.S. 367, 386, 88 S.Ct. 1673, 1684, 20 L.Ed.2d 672 (1968) (federal statute prohibiting burning of draft card did not abridge free speech); *Cox v. Louisiana*, 379 U.S. 536, 575, 85 S.Ct. 453, 467, 13 L.Ed.2d 471 (1965) (application of state laws prohibiting picketing violated free speech). The NAACP argues that the flying of the flag violates the Free Speech Clause in two ways. First it argues that the presence of the flag chills free speech, as evidenced by appellant Reed's testimony that he has difficulty saluting the American flag atop the capitol while the confederate flag flies. The flag may indeed cause such discomfort, but there is no statute or ordinance, federal or state, absolutely prohibiting Reed or the other NAACP members from saluting the American flag. There is no threat of persecution or prosecution if they salute the American flag. Only Reed's own emotions make his speech difficult. Even the NAACP admits that "the question of whether feelings are hurt or whether speech has been chilled by government action is a question not of law, but of social sensitivity." The federal judiciary is not empowered to make decisions based on social sensitivity. Because the NAACP has advanced no proof that the flag prohibits its members from speaking or punishes them for speaking, the district court properly granted summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

■■■■ Second, the NAACP argues that the flag is government speech which improperly communicates a limited set of messages. As one commentator has noted, "[f]ree speech theory has focused on the government as censor; it has had little to say about the process by which the government adds its voice to the market place." Shiffrin, *Government Speech*, 27 U.C.L.A. L.Rev. 565, 569–70 (1980). Indeed, the First Amendment protects citizens' speech only from government regulation; government speech itself is not protected by the First Amendment. *Columbia Broadcasting System, Inc. v. Democratic Nat. Comm.*, 412 U.S. 94, 139 and n. 7, 93 S.Ct. 2080, 2104, and n. 7, 36 L.Ed.2d 772 (1973) (Stewart, J., concurring).

■■■■ Restrictions on government speech seem to spring from one ideal: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943). There are three ways in which the government's attempts to prescribe orthodoxy have been restricted. First, the government may not abridge "equality of status in the field of ideas" by granting the use of public forums to those whose views it finds acceptable while denying their use to those with

**1566**

controversial views. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). This concern is especially important when the government's dedication of a forum suppresses controversial or political speech. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 575 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). Second, the government may not monopolize the "marketplace of ideas," thus drowning out private sources of speech. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969). For example, the government may not confer radio frequency monopolies on broadcasters it prefers. *Id.* Finally, the government may not "compel persons to support candidates, parties, ideologies or causes that they are against." *Lathrop v. Donohue*, 367 U.S. 820, 873, 81 S.Ct. 1826, 1853, 6 L.Ed.2d 1191 (1961) (Black, J., dissenting). For instance, state citizens may not be compelled to use car license plates carrying messages with which they disagree. *Wooley v. Maynard*, 430 U.S. 705, 717, 97 S.Ct. 1428, 1436, 51 L.Ed.2d 752 (1977).

None of these restrictions, however, is directly applicable to the present situation. The capitol dome is not public property which "by tradition or designation [is] a forum for public communication." *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). Thus, the state may reserve the dome for its own communicative purposes as long as that reservation is reasonable and is not an effort to suppress expression because the public officials oppose the speaker's view. *Id.* There is no evidence that the dome is reserved to the state in order to suppress controversial speech. Neither does the flag represent government monopolization of the marketplace of ideas.

Government communication is legitimate as long as the government does not abridge an individual's "First Amendment right to avoid becoming the courier for such message." *Wooley*, 430 U.S. at 717, 97 S.Ct. at 1436. The government of

Alabama does not compel its citizens to carry or post the flag themselves, or to support whatever cause it may represent. It might appear problematic at first glance that the state is using the NAACP's tax dollars to raise and maintain the flag, and thus is forcing them to contribute to a cause repugnant to them. The Supreme Court has held that union members cannot be compelled to pay dues which support causes disagreeable to them. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). *Abood* has never been applied to the government, however; if it were, taxation would become impossible. Neither does the state force citizens to salute the confederate flag. There is no statute, ordinance, or policy requiring citizens to salute any of the flags atop the capitol. A person may choose to salute the American flag, but such a choice does not force the individual to salute the confederate flag; the salutes are separate and distinct.

It is unfortunate that the State of Alabama chooses to utilize its property in a manner that offends a large proportion of its population, but that is a political matter which is not within our province to decide. The remedy for such a grievance lies within the democratic processes of the State of Alabama and the voting rights of all its citizens, "the restraints on which the people must often rely solely, in all representative governments." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 197, 6 L.Ed. 23 (1824).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of the state's motions for summary judgment.