W.C. NELSON, Jr., Eudora Brackett, Executrix of the Estate of James Brackett, Robert Head, Jr., Plaintiffs,

v.

UNITED STATES of America, Dan Glickman, in his official capacity as Secretary of Agriculture of the United States Department of Agriculture, and Michael T. Dombeck, Chief of the Forest Service of the United States Department of Agriculture, Defendants.

No. CIV.2:98CV52WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

Aug. 18, 1999.

Henry D. Fellows, Jr., Stephanie May-field Wright, Fellows Johnson & La Briola, Atlanta, GA, for W.C. Nelson, Jr., Eudora Brackett, Executrix of the Estate of James Brackett, Robert Head, Jr., plaintiffs.

Patricia Rebecca Stout, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, for United States of America, Dan Glickman, in his official ca-pacity as Secretary of Agriculture of the United States Department of Agriculture, Michael T. Dombeck, Chief of the Forest Service of the United States Department of Agriculture, defendants.

### ORDER

O'KELLEY, Senior District Judge.

On June 22, 1999, the court conducted a non-jury trial in the above-styled case. The issues considered at trial were as fol-lows: (1) whether plaintiffs have been pro-vided adequate access to their property by the United States Forest Service of the United States Department of Agriculture ("Forest Service") as required by Section 5(a) of the Wilderness Act, as amended, 16 U.S.C. § 1134(a), and (2) whether the For-est Service's refusal to provide access via the Brasstown Wagon Road resulted in an unconstitutional taking in violation of the Fifth Amendment of the Constitution. Af-ter careful consideration of the evidence presented during trial, the court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

### FINDINGS OF FACT[1]

1. The court makes the findings of fact based on the stipulated facts and the evidence pre-

Plaintiffs own a 69.11 acre parcel of land in Towns County, Georgia, which they purchased in May of 1987 (the "Property") for $95,200. At that time, the Property was accessible by two means: the Brasstown Wagon Road and the Yewell Cove Road.[2] Plaintiffs purchased the Property even though they had learned in a January 1987 meeting that Brasstown Wagon Road was going to be closed by the Forest Service. In September of 1987, the Forest Service erected gate barriers on the Brasstown Wagon Road, which prevented plaintiffs from accessing the Property by way of the Brasstown Wagon Road. Soon thereafter, in October of 1987, plaintiffs filed suit against the Forest Service seeking access via the Brasstown Wagon Road in the case of *James Brackett, et al. v. United States of America, et al.*, Civ. No. 2:87–cv–151–WCO, in the Northern District of Georgia, Gainesville Division. At the time the case was tried, the Property was not completely surrounded by the Chattahoochee National Forest and thus § 5(a) of the Wilderness Act did not apply. This court found that the issue of adequate access could be revisited when or if the Property became completely surrounded by federal land.

In April of 1992, Charles A. Smithgall conveyed the only remaining privately owned adjacent property to the United States. In light of the complete surrounding of the Property, plaintiffs submitted a Special Use Application to the Forest Service seeking adequate access to the Property by way of the Brasstown Wagon Road in September of 1996. Plaintiffs requested removal of the gates on Brasstown Wagon Road to allow for permanent use by the general public. In response to an inquiry by the Forest Service, plaintiffs represented that they intended to construct a peace-

ful retreat of two or three cabins on the Property and also use it for picnicking. They also requested permission to improve Brasstown Wagon Road to make it passable by a non-four wheel drive vehicle. Furthermore, plaintiffs indicated that they needed a utility easement in order to place power on the road to drive at night.

In considering plaintiffs' Special Use Application, the Forest Service determined that plaintiffs could go forward with their intended use to build two or three cabins on the two to four acres of gently rolling land on the northwest corner of the property that is accessible by Yewell Cove Road. The Forest Service did not consider the scope of plaintiffs' access on the portion of Yewell Cove Road that is not on Forest Service land, reasoning that it is up to the landowner to gain access over private property. After seventeen months of consideration, plaintiff's Special Use Application was denied.

Yewell Cove Road existed prior to 1939 when the United States government acquired the tract of land that is west/northwest of the Property. Yewell Cove Road runs across land owned by the Plott family, and, more specifically, is located between the Plott house and the barn. It then runs southeast through other privately owned property[3] where it crosses Yewell Branch, runs in the creek bed for about fifty yards, and then parallels the creek for some distance. Along Yewell Cove Road at this point are signs warning trespassers. Yewell Cove Road then crosses Forest Service property[4] and enters the subject Property at its northwest corner. Yewell Cove Road terminates at the base of a rock cliff. The northwest corner of the property consists of approxi-

---

sented at trial.

**2.** At trial, the parties disagreed on the proper name for this access with the plaintiffs referring to it as the "Yewell Cove Trail" and the defendants using the term "Yewell Cove Road." The court recognizes that the parties were referring to the same means of access, and, in this order, will refer to it as the "Yewell Cove Road."

**3.** No evidence was presented as to the identity of these property owners.

**4.** The Forest Service has erected a gate at the point where Yewell Cove Road enters its property, but plaintiffs have been provided a key.

mately two to four acres of gently rolling land. At the present time, Yewell Cove Road does not provide access to the eastern part of the Property, which is some 1000 feet higher in elevation than the northwest corner of the Property where Yewell Cove Road enters.

Brasstown Wagon Road begins at the campus of Young Harris College and traverses over private land and Forest Service property before entering plaintiffs' Property from the north at the eastern portion of the Property. The Forest Service has erected one gate between Young Harris and the Property where Brasstown Wagon Road enters Forest Service property and another gate at the south boundary of the Property where the road exits. Plaintiffs have obtained a written verification to use the right of way from Young Harris College.

Currently, a person using a four wheel drive vehicle could not traverse the Property by either road. In addition, Yewell Cove Road and Brasstown Wagon Road would both require improvements to make them accessible by means of a non-four wheel drive vehicle. However, Brasstown Wagon Road had once been a state-graded road, and, in fact, the plaintiffs regraded the road in 1987. No blasting would be required on Forest Service property to improve the Brasstown Wagon Road although some blasting may be required on the subject Property to make it safe for vehicular travel.

## CONCLUSIONS OF LAW

I. Fifth Amendment Takings Claim

■ In the court's Order of February 2, 1999, the court declined to dismiss plaintiffs' Fifth Amendment claim on res judicata grounds because it was unclear whether the factual basis for plaintiffs' Fifth Amendment claim is based on the same "operative nucleus of fact" as plaintiffs' Fifth Amendment claim in *James Brackett, et al. v. United States of America, et*

*al.,* Civ. No. 2:87–cv–151–WCO, a case regarding the same piece of Property before this court. In particular, the court noted that although plaintiffs attached a copy of this court's order in *Brackett* to their complaint, that order does not specify the factual basis of the Fifth Amendment claim and no other portions of the record from *Brackett* had been submitted. In, *Brackett,* this court determined that defendants' conduct did not violate the Fifth Amendment of the Constitution because the defendants had not taken any rights from the plaintiffs regarding use of their property. *Brackett* Order of August 31, 1998 at 9. This court reasoned that "[w]hen plaintiffs bought the disputed property, the government had announced, and plaintiffs had notice, that the Brasstown Wagon Road would be closed. . . . The government cannot be held responsible for plaintiffs' error in judgment." *Id.* at 9–10.

■ Although defendants have not submitted additional portions of the record in *Brackett* for consideration, the court takes judicial notice of the complaint filed in the earlier case and holds that plaintiffs' claim is barred by the doctrine of res judicata. In *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980),[5] the former Fifth Circuit held that "[d]ismissal by the court sua sponte on res judicata grounds ... is permissible in the interest of judicial economy where both actions were brought before the same court" even if the record does not contain either the complaint or order of dismissal in the earlier action. Federal Rule of Evidence 201 allows the district court to take judicial notice of adjudicative facts whether requested or not and at any stage of the proceedings.

■ For res judicata to bar a subsequent suit, four elements must be present: (1) a final judgment on the merits rendered in the previous suit; (2) the judgment was rendered by a court of competent jurisdiction; (3) the parties, or

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

those in privity with them, are identical in both cases; and (4) the same cause of action is involved in both cases. *Id.* "If all of these elements are met, any claim that was *or could have been adjudicated* in the previous action is precluded." *N.A.A.C.P. v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990) (emphasis added). Whether the same cause of action is involved in both cases is determined by reference to the "operative nucleus of fact." *Thomas v. Evans,* 880 F.2d 1235, 1240 (11th Cir.1989).

It is undisputed that *Brackett* concerned the same parties and involved the same Fifth Amendment cause of action. The *Brackett* plaintiffs alleged that defendants violated the Fifth Amendment "by erecting gates at the two entry points on the State Road to the Property" thereby causing "a substantial reduction in the market value of the Property." *Brackett* Complaint ¶¶ 34–39. Plaintiffs make almost identical allegations in this case. Verified Complaint ¶¶ 41–46. Accordingly, the court holds that the doctrine of res judicata bars plaintiffs' Fifth Amendment claim.

## II. Wilderness Act Claim

Plaintiffs assert that the defendants have failed to give them adequate access to their Property pursuant to § 5(a) of the Wilderness Act, as amended, 16 U.S.C. § 1134(a). Through trial and post-trial briefs, the parties dispute the standard that the court should use in adjudicating this matter. First, plaintiffs argue that a de novo review of the Forest Service's denial of the Special Use Application is warranted under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(B),[6] because the denial of the Special Use Application constitutes a taking within the meaning of the Fifth Amendment. *See Porter v. Califano,* 592 F.2d 770, 780 (5th Cir.1979)(holding that "courts should make an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making" under 5

U.S.C. § 706(2)(B)). Because the court has determined that plaintiffs' Fifth Amendment claim is barred by the doctrine of res judicata, plaintiffs may not take advantage of a de novo review under 5 U.S.C. § 706(2)(B).

■ Second, plaintiffs contend that because § 1134(a) creates a private right of action, the court's review of the Forest Service's determination is de novo. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The court finds no implied private cause of action in 16 U.S.C. § 1134(a). In *Cort v. Ash,* the Supreme Court set out four factors for a court to consider in support of an implied private cause of action in a federal law. "These are (1) whether the statute creates a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create or deny such a remedy; (3) whether it would be consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law." *Belluso v. Turner Communications Corp.,* 633 F.2d 393, 395–96 (5th Cir.1980). Since its decision in *Cort v. Ash,* the Supreme Court has cautioned against giving too much weight to these factors in the absence of evidence suggesting that Congress intended an implied private cause of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 574, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). In *Belluso,* the court considered whether the Federal Communications Act creates a private cause of action for violations of 47 U.S.C. § 315(a). Specifically, the court looked at the language of the statute in question, the overall legislative scheme, and the statute's purpose and concluded that Congress did not intend to create a private cause of action.

**6.** 5 U.S.C. § 706(2)(B) states: "The reviewing court shall—(2) hold unlawful and set aside agency action, findings, and conclusions found to be—(B) contrary to constitutional right, power, privilege, or immunity."

In the instant case, the general purpose of the Wilderness Act is "to assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition." 16 U.S.C.A. § 1131; *see also* H.R. REP. No. 88–1538 (1964). More specifically, § 1134(a) provides a right of adequate access to private owners of land completely surrounded by national forest. However, the existence of a federal right in favor of the plaintiff is evidence only of congressional intent; "it normally is not conclusive evidence that Congress intended to provide the specific remedy asserted by the plaintiff to vindicate that right." *Belluso*, 633 F.2d at 396. Furthermore, plaintiffs have not pointed to any legislative history supporting a private cause of action, nor has the court found any.

Moreover, the statutory framework shows that Congress did not intend to create a private cause of action. Section 1134(b) of Title 16 of the United States Code authorizes the Secretary of Agriculture to create "reasonable regulations consistent with the preservation of the area as wilderness [to] permit ingress and egress to such surrounded areas by means which have been or are being customarily enjoyed with respect to other such areas similarly situated." In *Belluso*, the Eleventh Circuit held that implying a private remedy would be inconsistent with the Federal Communication Act's mandate to the FCC to implement and enforce the Act. 633 F.2d at 396. Similarly, implying a private cause of action in this case would conflict with the authority vested in the Secretary of Agriculture to regulate access to lands completely surrounded by wilderness. *See* § 1134(b).

In addition, in *Clouser v. Espy*, 42 F.3d 1522 (9th Cir.1994), the plaintiffs challenged, in part, the Forest Service's restrictions on access to mining claims on land that was completely surrounded by wilderness areas. The court noted that parties challenging agency actions must

bring their claims under the APA unless the federal law has been interpreted as conferring a private right of action or if the federal law contains a specialized regulatory scheme. *Id.* at 1527 n. 5. Notwithstanding these observations, the court held that all of plaintiffs' claims against the Forest Service except for their constitutional taking and procedural due process claims must be brought under the APA. Similarly, plaintiffs in the case sub judice must bring their challenge of the Forest Service's denial of their Special Use Application under the APA.

■ "Under the APA, agency actions should be reversed if they are found to be 'arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Sierra Club v. Martin*, 168 F.3d 1, 3 (11th Cir.1999)(reviewing Forest Service's approval of timber sales); 5 U.S.C. § 706(2)(A). The scope of review under the arbitrary and capricious standard is narrow, and the court cannot substitute its own judgment for that of the agency. Instead, the court must determine whether a rational connection exists between the facts found and the choice made. *Atlanta Gas Light Co. v. F.E.R.C.*, 140 F.3d 1392, 1397 (11th Cir.1998). However, agency actions are deemed as arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)(quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

■ With these standards in mind, the court now turns to the merits of plaintiffs' Wilderness Act claim. Plaintiffs assert that the Forest Service acted arbitrarily and capriciously in denying their Special Use Application because the Forest Service did not determine whether plaintiffs had the right to use Yewell Cove Road and

did not consider the condition of Yewell Cove Road before it reaches the wilderness area. The defendants submit that plaintiffs have failed to show that they have a prescriptive right of way over Brasstown Wagon Road whereas they would have such a right over Yewell Cove Road, and in any case the "Forest Service has no legal authority to assist Plaintiffs with any problems they may encounter obtaining access over other private land." Defs. Trial Brief at 8. In addition, the defendants assert that under the regulations, plaintiffs' failure to show that they have no access to their property is fatal to their claim. *See* 36 C.F.R. § 251.114(f)(1).

§ 1134(a) states:

In any case where State-owned or privately owned land is completely surrounded by national forest lands within areas designated by this chapter as wilderness, such State or private owner shall be given such rights as may be necessary to assure adequate access to such State-owned or privately owned land by such State or private owner and their successors in interest or the State-owned land or privately owned land shall be exchanged for federally owned land in the same State of approximately equal value under authorities available to the Secretary of Agriculture.

Adequate access is defined in the regulations as "a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with similarly situated non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources." 36 C.F.R. § 251.111. In addition, the regulations provide criteria to use in considering whether to grant a special use authorization for access to non-Federal lands. "In issuing a

special-use authorization for access to non-Federal lands, the authorized officer shall authorize only those access facilities or modes of access that are needed for the reasonable use and enjoyment of the land and that minimize the impacts on the Federal resources. The authorizing officer shall determine what constitutes reasonable use and enjoyment of the lands based on contemporaneous uses made of similarly situated lands in the area and any other relevant criteria." 36 C.F.R. § 251.114(a).

In the present case, the defendants did not contest that building two or three cabins on the Property constitutes "reasonable use and enjoyment" of the Property consistent with similarly situated non-Federal land. 36 C.F.R. § 251.111. The issue then is whether Yewell Cove Road is a route or access that provides for this reasonable use and enjoyment of the Property. After careful consideration and review, the court rules that the Forest Service's denial of plaintiffs' Special Use Application was arbitrary and capricious because the Forest Service failed to consider whether Yewell Cove Road constituted adequate access, particularly where it crosses private property.

First, the Forest Service did not determine whether plaintiffs had the right to cross private land on Yewell Cove Road, specifically by use of a vehicle. Mr. Jerry Pless, a land surveyor with the Forest Service, testified that the Forest Service never asked for evidence that plaintiffs had a prescriptive right over Yewell Cove Road because their use of the road has never been contested. However, the signs warning trespassers on Yewell Cove Road indicate that private landowners will assert their rights.[7]

7. In their post-trial brief, defendants argue that a similar access issue exists regarding private land southeast of Young Harris College on Brasstown Wagon Road. However, Mr. Pless admitted that the plaintiffs' use of Brasstown Wagon Road has never been restricted by private owners whereas there is some indication through the placement of signs on Yewell Cove Road that private landowners will contest expanding access over their property. Notwithstanding any question of prescriptive rights on Brasstown Wagon Road, the Forest Service did not consider this issue with respect to either means of access in denying plaintiffs' Special Use Application.

Second, the Forest Service did not consider whether Yewell Cove Road provided adequate access outside of Forest Service property. Mr. Pless reiterated several times that the Forest Service did not consider whether portions of Yewell Cove Road outside of Forest Service property were accessible because it was plaintiffs' duty to obtain access over private land. In addition, Mr. Pless admitted that the Forest Service did not do any study of the environmental effects on Yewell Branch Creek by having a road in the creek bed, nor did the Forest Service consider whether anyone could legally divert the creek because that portion of Yewell Cove Road was on private land. The court finds this position to be untenable. Under the Forest Service's reasoning, landlocked parcels are considered to have adequate access as long as a right of access exists over adjoining Forest Service land, even if the landowners cannot access the Forest Service's purported right of way over adjacent private property.

Moreover, the evidence presented at trial indicated that Yewell Cove Road does not constitute adequate access if considered in its entirety. Ms. Sandra Pence, of the Atlanta, Georgia Regional Office of the Forest Service, considered plaintiffs' exhibits 23, 25, 26, 27, and 28, which accurately depict Yewell Cove Road as it descends into the creek bed on private property, and testified that she would not consider it to provide "adequate access." Ms. Pence has been employed at the Forest Service for thirty-two years and has managed the special use program in the southern region, which encompasses fourteen national forests from Virginia to Texas, since 1989.

Finally, the Forest Service deemed Yewell Cove Road to be adequate access even though the road provides access only to two to four acres of plaintiffs' 69.11 acre tract. Mr. Pless testified that he determined that Yewell Cove Road satisfied the access requirement in light of plaintiffs' stated intention to build two or three cabins because it provided access to two to four acres on the northwest corner of the Property. Mr. Pless also stated that the Forest Service has not studied what drilling or blasting would be required to create access from Yewell Cove Road to the rest of the Property. Mr. W.C. Nelson testified that in order to provide access to the rest of the Property, a "zigzag" road would have to be constructed by blasting and drilling through a rock bed and removing trees.

■ Defendants also argue that since plaintiffs have failed to show that they have no access to their property, they cannot be granted any additional access. Federal regulations require that the officer considering whether to grant the requested access must ensure that the "landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law." 36 C.F.R. § 251.114(f)(1). The court rules that the Forest Service's application of 36 C.F.R. § 251.114(f)(1) in this case is against the clear mandates of 16 U.S.C. § 1134(a), which requires that landowners be provided "adequate access." This standard is higher than the "any access" test that the Forest Service is relying upon. Accordingly, the court declines to hold that 36 C.F.R. § 251.114(f)(1) requires an adjudication in favor of the Forest Service based on the existence of Yewell Cove Road.

■ Because this court has determined that the Forest Service's denial of plaintiffs' Special Use Application was arbitrary and capricious, the issue of what is an appropriate remedy remains. In their verified complaint, plaintiffs request that the court order the defendants to remove the two gate barriers on Brasstown Wagon Road and that the defendants be permanently enjoined from erecting other gate barriers. Defendants argue that even if the court overturns the Forest Service's denial, the appropriate course is to remand this case to the Forest Service for further consideration. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549, 98

S.Ct. 1197, 55 L.Ed.2d 460 (1978); *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Defendants caution that even after the Forest Service determines that an application for access should be granted, the application must then go through any review required under the National Environmental Protection Act. Plaintiffs contend that the court is authorized under 5 U.S.C. § 706 to "hold unlawful and set aside" the Forest Service's decision.

Section 706(2)(A) states: "The reviewing court shall—(2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 549, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), the Supreme Court held: "We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration.'" (quoting *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). Although the Eleventh Circuit has not specifically spoken on this issue, the Tenth Circuit has allowed remand to the agency for further consideration when the "agency has failed to provide a reasoned explanation for its action." *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560 (10th Cir.1994).

However, in *McDonnell Douglas Corp. v. National Aeronautics & Space Corp.,* 895 F.Supp. 316, 319 (D.D.C.1995), the district court held that the agency "is not entitled to a second bite of the apple just because it made a poor decision—if that were the case, administrative law would be a never ending loop from which aggrieved parties would never receive justice." The court reasoned that the "record was inade-

quate to support [the agency's] erroneous decision, which is different from being inadequate to support any decision or from suffering a procedural deficiency that might necessitate remand to the agency." *Id.*

The court rules that *Vermont Yankee Nuclear Power Corp.* and *Camp* are distinguishable. In *Vermont Yankee Nuclear Power Corp.,* the Supreme Court held that the court of appeals lacked the authority to abrogate a rulemaking proceeding based on the procedural devices used by the agency as long as the agency adhered to the statutory minima. 435 U.S. at 548, 98 S.Ct. 1197. Relying on *Camp,* the Supreme Court explained that if the lower court determined that the finding was not sustainable on the record, the matter should be remanded to the agency for further consideration. *Id.* at 549, 98 S.Ct. 1197. The *Camp* Court required remand to the agency, which had inadequately explained its decision. 411 U.S. at 142, 93 S.Ct. 1241. The case sub judice involves an erroneous decision rather than the procedural problem in *Vermont Yankee Nuclear Power Corp.* or the inadequately explained decision in *Camp.* Accordingly, remand is improper. *See McDonnell Douglas,* 895 F.Supp. at 316.

## CONCLUSION

For the reasons set forth above, the court finds in favor of the defendants on plaintiffs' takings claim based on the Fifth Amendment of the United States Constitution. The court finds in favor of the plaintiffs on their claim under § 5(a) of the Wilderness Act, 16 U.S.C. § 1134(a). The Forest Service's denial of plaintiffs' Special Use Application is hereby VACATED pursuant to 5 U.S.C. § 706(2)(A). The court hereby ENJOINS the defendants from blocking plaintiffs' access to their Property via the Brasstown Wagon Road.